IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUY L. DAVIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants*. | Case No. 1:22-cv-00829-RDM <br><br> JURY TRIAL DEMANDED |

**OBJECTION TO DEFENDANTS'**
**NOTICE OF RELATED CASE**

Plaintiffs object to the Notice of Related Case filed by Defendants MTN Group Limited, Phuthuma Nhleko, and Irene Charnley (Docket No. 17) asserting that this case is related to *Chand v. MTN Irancell Telecommunications Services Co.*, No. 1:22-cv-00830-TNM ("*Chand*"), for purposes of Local Civil Rule 40.5(b)(3). Although the two cases involve the same defendants and similar causes of action, they are brought by different plaintiffs injured in different terrorist attacks committed by different terrorist groups, and will require the plaintiffs in each case to prove different facts discussed and analyzed by different experts. In addition, there are procedural distinctions between the two cases that make resolution in separate proceedings both fairer and more efficient. The Notice of Related Case should be rejected.

BACKGROUND

To determine whether this case and *Chand* are related, the Court should understand what each case is about—and what each is not. Defendants' characterization of the two complaints— that "the MTN Defendants are liable on the theory that MTN Group acquired an indirect, minority, non-controlling stake in MTN Irancell … such that the company's profits indirectly furthered the

IRGC's support of terrorist groups"—is an absurdly anodyne description of highly detailed, richly sourced allegations that paint a much darker picture. Read fairly, the Complaint in this case alleges as follows:

- The Defendants secretly agreed – and fraudulently concealed that agreement from MTN Group's shareholders – to assist the "security" agenda of Iran's Islamic Revolutionary Guard Corps ("IRGC"), including its Lebanese Hezbollah Division ("Hezbollah") and Qods Force ("Qods Force"), and knowingly entered into and facilitated an effective joint venture with notorious fronts for Hezbollah and the Qods Force (*e.g.*, ¶¶ 3-6, 20, 47, 57, 62, 338-361, 442, 454, 498, 506, 540, 610, 719, 721, 948);

- a primary purpose and effect of the Defendants' involvement in that joint venture was to circumvent U.S. sanctions, in knowing violation of U.S. law, to obtain embargoed dual-use technology to aid the "security" activities of Hezbollah and the Qods Force (*e.g.*, ¶¶ 3, 9, 49, 374, 386, 426, 441, 489-497, 511-532);

- the rivers of cash flow generated by the joint venture were intended for use by, and were used by, Hezbollah, the Qods Force, and the IRGC's Sunni terrorist proxies in their terrorist campaigns against Americans in Iraq and Afghanistan (*e.g.*, ¶¶ 15, 42, 49-52, 382, 384-385, 425, 506-509, 712, 718-724, 1905);

- Defendants further aided the IRGC's "security" agenda in Afghanistan by making illegal direct payments to the terrorists and participating in terrorist attacks by deactivating their cellular towers at the terrorists' request for the express purpose of degrading the American military's counterinsurgency efforts (*e.g.*, ¶¶ 552-593); and

- the Plaintiffs' injuries suffered in attacks committed by Sunni terrorists were a direct result of Defendants' material support for the terrorist enterprise (*e.g.*, ¶¶55, 946-950, 1902-1905).

The attacks at issue in this case occurred in both Afghanistan and Iraq (primarily in Anbar Province) and were committed by Sunni terrorists including al-Qaeda (in Iraq and Afghanistan), al-Qaeda-in-Iraq (which later became ISIS), Ansar-al-Islam, and the Taliban, including its Haqqani Network, which often jointly committed attacks with al-Qaeda in Afghanistan. Plaintiffs' proof in this case will focus heavily on those Sunni groups, their roles in the attacks that injured Plaintiffs, and the nature of their connections to Defendants' joint venture.

The allegations in *Chand*, although presently similar in outline,[1] are materially different in detail. The basic allegations relating to Defendants' Iranian joint venture and its knowing connections to the IRGC and Hezbollah are the same (and frankly are not subject to reasonable dispute, having been widely reported in the press and elsewhere for decades), but the key facts of the attacks by *Shiite* terrorists (including the IRGC's Qods Force, Hezbollah, and Jaysh-al-Mahdi and its Ka'taib Hezbollah and Asaib Ahl Al-Haq Special Groups) and Defendants' connections to them are substantially different from the analogous facts in this case. (As but one minor example, the *Chand* Complaint refers to the Shiite terrorist group Jaysh-al-Mahdi 667 times; the *Davis* Complaint, just 55.) The nature and extent of Defendants' connections to the Shiite terrorists via the Shiite IRGC and Hezbollah diverge significantly from their connections to the Sunni terrorists at issue in *Davis*, and will require different proof.

---

[1] As explained below, even the limited similarity that now exists is likely to be reduced going forward. Plaintiffs' investigation of Defendants' conduct remains ongoing, and undersigned counsel believes Plaintiffs may offer significant additional allegations in *Davis* should Defendants move to dismiss, which allegations would apply to *Davis* but not *Chand*.

3

In short, the two cases were brought separately because they are different cases brought by different plaintiffs, with key aspects of Defendants' liability to be proved with different evidence.

## LEGAL STANDARD

The default rule in this District is that cases are randomly assigned under Local Rule 40.3(a), with judges "scrupulous[ly]" adhering to random assignment "to avoid any appearance of judge-shopping or favoritism in assignments and to assure the public that cases were assigned on an impartial and neutral basis." *Trump v. Comm. on Ways & Means, U.S. House of Representatives*, 391 F. Supp. 3d 93, 97 (D.D.C. 2019) (citing *Tripp v. Executive Office of the President,* 196 F.R.D. 201 (D.D.C. 2000); *see also Boyd v. Farrin*, No. 12-cv-1893, 2012 WL 6106415, at *1 (D.D.C. Dec. 10, 2012).  The "related case" rule set forth in Local Civil Rule 40.5 establishes an exception that "rests primarily on considerations of judicial economy and aims to prevent the inefficiency inherent in having two judges handling cases that are so related that they involve common factual issues or grow out of the same event or transaction." *Boyd*, 2012 WL 6106415, at *1 (internal quotations omitted).  As the parties seeking to avoid random assignment, Defendants bear the burden of showing that an exception to the default rule applies. *Id*. at 95.

## ARGUMENT

I.  **This case and *Chand* do not involve "common issues of fact" sufficient to overcome the presumption of random assignment.**

Of Rule 40.5's four bases for identifying related cases, Defendants allege only that this case and *Chand* "involve common issues of fact."  Of course, many cases involve some common facts; the question under Rule 40.5 is whether the overlap is so significant that considerations of judicial economy overwhelm the presumption that cases brought separately should be adjudicated

4

separately. *Washington Alliance of Tech. Workers v. Dep't of Homeland Security*, 2016 WL 11184186, at *2 (D.D.C. June 24, 2016)   Here, they do not.

Although the two cases involve the same defendants and the same cause of action, the differences substantially outweigh those similarities.  The cases involve different plaintiffs, with no overlap between the two plaintiff groups.  Their injuries were caused by different terrorist attacks, again with no overlap among the attacks.   And those attacks were committed by different terrorist groups in different parts of the world where the Qods Force and Hezbollah deployed Defendants' resources to attack Americans: the *Davis* attacks by Sunni cells in Afghanistan and Iraq (primarily Anbar Province) and the *Chand* attacks by Shiite cells in Iraq (primarily Baghdad and Basra).  Plaintiffs believe that the core questions that will occupy the Court's time in each case will concern the operation of the two sets of terrorist groups (Sunni here, Shia in *Chand*), and the evidence needed to prove up the critical allegations will be entirely different, requiring different fact witnesses, expert witnesses, and documentary evidence.  There are thus few efficiencies to be gained by designating the two cases as related.

Plaintiffs are aware of no cases in which this Court has found that "common issues of fact" render two cases related in circumstances like these.  In cases involving different plaintiffs, the Court generally reserves "related" status for actions in which those plaintiffs are injured in the same incident or are challenging the same regulation.  *E.g., Autumn Journey Hospice v. Sebelius*, 753 F. Supp. 2d 135 (D.D.C. 2010) (finding cases related where identically situated plaintiffs each challenged the same regulation); *Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (same); *Owens v. Republic of Sudan*, 2021 WL 131446, at *4 (D.D.C. Jan. 14, 2021) (finding cases related where "the factual and legal questions" presented were "identical").   In those circumstances, "each case thus presents identical issues for resolution," such that judicial economy

5

warrants consideration by the same judge. *Autumn Journey Hospice,* 753 F. Supp. 3d at 140. Not so here: key issues of proof will be different in the two cases, and differences in proof may result in different outcomes.

II. **Because of Procedural Differences Between this Case and *Chand*, Considerations of Fairness and Judicial Economy Require that the Cases Remain Separate.**

Even if this case and *Chand* shared a greater nucleus of overlapping facts, other considerations bearing on judicial economy and fairness would require that the cases remain separate.

First, every plaintiff in *Chand* is also a plaintiff in *Atchley v. AstraZeneca UK Ltd*., No. 17-cv-02136 (D.D.C.), in which the D.C. Circuit recently found plausible certain allegations that are raised in substantially identical fashion in *Chand*, but not in *Davis*. *Atchley v. AstraZeneca UK Ltd,* 22 F.4th 204 (D.C. Cir. 2022). For example, the Court of Appeals found plausible the *Atchley* plaintiffs' allegations that "Hezbollah … planned and authorized" the attacks that injured the *Atchley* plaintiffs—a subset of whom are plaintiffs in *Chand* making the same allegations about the same attacks.[2] *Id*. at 209. Defendants in *Chand* cannot now challenge that determination, which is law of the Circuit. *See, e.g., LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (law of the circuit doctrine requires that "the same issue presented in a later case in the same court should lead to the same result"). To the extent that Defendants are now foreclosed (either formally or in practical terms) from challenging those and similar allegations, the *Chand* litigation will benefit from *Atchley*-related efficiencies that will not apply in *Davis*. Designating the cases as related (and consolidating them, which we assume is Defendants' intention if they

---

[2] For example, compare *Atchley* Complaint ¶462-464 with *Chand* Complaint ¶¶ 790-794 (each describing the August 17, 2007 attack that led to Plaintiff Michael Chand, Jr.'s injuries and subsequent death at the hands of Jaysh al-Mahdi).

6

prevail on the relatedness issue[3]) would unnecessarily delay the progress of *Chand*, to the detriment of the plaintiffs in that case.

Second, assuming Defendants move to dismiss in this case, Plaintiffs intend to amend their Complaint as of right to include a series of substantive allegations unique to this case—potentially including, but not limited to, (a) a substantial expansion of plaintiffs' allegations concerning MTN Group's financing of protection payments to al-Qaeda and its sponsors in Syria, and (b) claims against one or more additional defendants. Because the potential amendments are unique to this case, they will increase the factual differences between the two cases, further reduce any opportunities for efficiency gains by litigating them together, and add further unnecessary delay to the resolution of the plaintiffs' claims in *Chand*.

For these reasons, both judicial efficiency and the *Chand* plaintiffs' right to swift resolution of their claims strongly favor rejecting the Notice of Related Case and keeping the two cases separate.

## CONCLUSION

For all the reasons given, the Court should reject the Notice of Related Case and leave each case with its currently assigned judge.

Dated:  May 6, 2022

---

[3] Plaintiffs believe that Defendants' Notice of Related Case is a preliminary step toward a motion to transfer both this case and *Chand* to the Eastern District of New York and consolidate them with another case pending there against some (but not all) Defendants and multiple defendants not involved here. *Zobay v. MTN Group*, No. 1:21-cv-03503 (E.D.N.Y.).  Plaintiffs would strongly oppose such a motion if and when filed. Transfer to the Eastern District of New York is inappropriate for a host of reasons, including: venue may be inappropriate there in one or both of these cases; *Zobay* involves different defendants and a different cause of action; all the *Chand* plaintiffs are already litigating ATA claims against other defendants in this District, which is more convenient for them; and perhaps most important, Plaintiffs' trial counsel in these cases may be conflicted out of any consolidated proceeding involving *Zobay*, depriving Plaintiffs of their chosen counsel.  In the event the Court accepts the Notice of Related Case, Plaintiffs request that full briefing be ordered before consolidation or transfer is considered.

Respectfully submitted,

*/s/ Eli K. Oliphant*

Eli K. Oliphant (D.C. Bar No. 503235)
Ryan R. Sparacino (D.C. Bar No. 493700)
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiffs*