**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUY L. DAVIS, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:22-cv-00829-RDM |
| MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, | |
| *Defendants*. | |
| SALLY CHAND, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:22-cv-00830-RDM |
| MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO
THE MTN DEFENDANTS' MOTION TO TRANSFER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

LEGAL STANDARD............................................................................................................... 10

ARGUMENT ........................................................................................................................... 11

    I.     Defendants Cannot Bear Their Burden To Show That Plaintiffs' Claims "Might Have Been Brought" in New York. ................................................................................ 11

    II.    The Private and Public Factors Do Not Favor Transfer. ................................................. 13

        A.    The Private Interest Factors Do Not Favor Transfer ................................................... 14

            1.    Plaintiffs' choice of this forum is entitled to deference. ............................................... 14

            2.    Plaintiffs' claims did not "arise" in the Eastern District of New York...................... 18

            3.    The convenience of the parties favors keeping these cases in D.C. .......................... 19

            4.    The convenience of witnesses favors keeping these cases in D.C............................. 21

        B.    The Public Interest Factors Do Not Favor Transfer ................................................... 24

            1.    The relative congestion of the two courts' caseloads favors keeping the cases in D.C.............................................................................................................................. 24

            2.    The two courts are equally familiar with the governing law. ..................................... 25

            3.    These cases do not involve any local controversies.................................................... 25

            4.    *Zobay* is materially different than these cases and does not justify transfer.............. 25

    CONCLUSION................................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*21 srl v. Newegg Inc.*,
  2010 WL 1178066 (N.D. Ill. Mar. 24, 2010) ............................................................ 13

*Abbey v. Modern Africa One, LLC*,
  305 B.R. 594 (D.C. Bankr. 2004) ..................................................................... 26, 27

*Abecassis v. Wyatt*,
  785 F. Supp. 2d 614 (S.D. Tex. 2011) ..................................................................... 4

*Araya v. JPMorgan Chase Bank, N.A.*,
  775 F.3d 409 (D.C. Cir. 2014) .............................................................................. 15

*Atchley v. AstraZeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022) .................................................................... 3, 5, 6, 17

*Atchley v. AstraZeneca UK Ltd.*,
  474 F. Supp. 3d 194 (D.D.C. 2020), *rev'd on other grounds*, 22 F.4th 204 (D.C. Cir. 2022) . 17

*Barham v. UBS Fin. Servs.*,
  496 F. Supp. 2d 174 (D.D.C. 2007) ............................................................ 25, 29, 30

*Bartlett v. Société Générale de Banque Au Liban SAL*,
  2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) ............................................................ 3

*Beauty Plus Trading Co., Inc. v. I & I Hair Corp*,
  2020 WL 6156285 (D.N.J. Oct. 21, 2020) .............................................................. 12

*Blechman v. Ideal Health, Inc.*,
  668 F. Supp. 2d 399 (E.D.N.Y. 2009) ............................................................... 29, 31

*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) ................................................................................ 4

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  2011 WL 1327137 (S.D.N.Y. Mar. 31, 2011) ......................................................... 13

*Cabrera v. Black & Veatch Special Projects Corp.*,
  2021 WL 3508091 (D.D.C. July 30, 2021) ........................................................... 3, 17

*Cain v. Twitter, Inc.*,
  2017 WL 1489220 (S.D.N.Y. Apr. 25, 2017) ......................................................... 29

*Calif. Farm Bureau Fed'n v. Badgley*,
  2005 WL 1532718 (D.D.C. June 29, 2005) ......................................................... 29, 31

*Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*,
  2017 WL 6760811 (S.D. Fla. Oct. 4, 2017) ........................................................... 29

*Comptroller v. Calhoun First Nat'l Bank*,
  626 F. Supp. 137 (D.D.C.1985) .......................................................................... 30

*Coultman v. Nat'l R.R. Passenger Corp.*,
  857 F. Supp. 231 (E.D.N.Y. 1994) ........................................................... 21, 29, 31

*Ctr. for Biological Diversity v. Tidwell*,
  2017 WL 6334085 (D.D.C. Feb. 24, 2017) .................................................. 19, 25

*Defenders of Wildlife v. Jewel*,
  74 F. Supp. 3d 77 (D.D.C. 2014) ................................................................ 26, 30

*Douglas v. Chariots for Hire*,
  918 F. Supp. 2d 24 (D.D.C. 2013) ..................................................................... 18

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
  336 F.R.D. 574 (N.D. Cal. 2020) ....................................................................... 12

*Garcia v. Acosta*,
  393 F. Supp. 3d 93 (D.D.C. 2019) ..................................................................... 13

*Harris Cnty. v. CarMax Auto Superstores Inc.*,
  177 F.3d 306 (5th Cir. 1999) ............................................................................. 30

*Holland v. A.T. Massey Coal*,
  360 F. Supp. 2d 72 (D.D.C. 2004) ............................................................... 30, 31

*In re Vicor Corp.*,
  493 F. App'x 59 (Fed. Cir. 2012) ................................................................. 30, 31

*Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*,
  621 F. Supp. 906 (D.D.C. 1985) ........................................................................ 14

*Intelect Corp. v. Cellco P'ship GP*,
  160 F. Supp. 3d 157 (D.D.C. 2016) .................................................................. 11

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) ................................................................................ 6

*Lihuan Wang v. Phoenix Satellite Television US, Inc.*,
  2014 WL 116220 (S.D.N.Y. Jan. 13, 2014) ..................................................... 30

*Martinez v. Deutsche Bank AG*,
  2017 WL 1366048 (S.D. Ill. Apr. 12, 2017) ............................................. *passim*

*Orbital Australia Pty Ltd v. Daimler AG*,
  2015 WL 4042178 (E.D. Va. July 1, 2015) ....................................................... 12

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ............................................................................. 5

*Reiffin v. Microsoft Corp.*,
  104 F. Supp. 2d 48 (D.D.C. 2000) ............................................................... 30, 31

*Sandpiper Residents Ass'n v. U.S. Dep't of Housing & Urban Dev.*,
  2021 WL 2582004 (D.D.C. June 23, 2021) ............................................... *passim*

*Saxton v. McDonough*,
  2022 WL 136796 (D.D.C. Jan. 14, 2022) .......................................................... 13

*Schmid Labs., Inc. v. Hartford Acc. & Indem. Co.*,
  654 F. Supp. 734 (D.D.C. 1986) ................................................................ 17

*Virts v. Prudential Life Ins. Co. of Am.*,
  950 F. Supp. 2d 101 (D.D.C. 2013) ............................................................ 11

*Volkswagen De Mexico, S.A. v. Germanischer Lloyd*,
  768 F. Supp. 1023 (S.D.N.Y. 1991) ........................................................... 11

**Statutes**

18 U.S.C. §2331(1)(A) ....................................................................................... 5

18 U.S.C. §2331(1)(C) ..................................................................................... 14

18 U.S.C. §2333(a) ............................................................................................ 4

18 U.S.C. §2333(d) ............................................................................................ 4

18 U.S.C. §2333(d)(2) ............................................................................. 5, 9, 26

18 U.S.C. §2334 ................................................................................................. 1

18 U.S.C. §2334(a) ..................................................................................... 13, 32

18 U.S.C. §2339A ............................................................................................ 32

18 U.S.C. §2339B ............................................................................................ 32

28 U.S.C. §1391 ................................................................................................. 1

28 U.S.C. §1404(a) .................................................................................. *passim*

Justice Against Sponsors of Terrorism Act,
  Pub. L. No. 114-222, 130 Stat. 852 (2016) .......................................... 3, 4, 9

  §2(a)(4) ........................................................................................................... 4

  §2(a)(6) ........................................................................................................... 4

  §2(b) ............................................................................................................... 5

**Other Authorities**

Administrative Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C-5
  (Dec. 31, 2021),
  https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/12/31 . 24

H.R. Rep. No. 115-858 (2018) .......................................................................... 4

S. Rep. No. 102-342 (1992) .............................................................................. 4

15 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure §3854 (4th ed.),
  Westlaw (database updated Apr. 2022) .................................................... 18

## INTRODUCTION

In 18 U.S.C. §2334, Congress enacted a special venue provision for Anti-Terrorism Act ("ATA") claims that—in a major departure from the standard federal venue provision in 28 U.S.C. §1391—allows ATA plaintiffs to file suit in any forum where "any plaintiff resides."  As Defendants concede, multiple plaintiffs in *Davis* and *Chand* reside in this District, making venue here both proper and consistent with Congress's clear intention to give plaintiffs wide latitude in choosing where to sue.

Defendants nonetheless seek to transfer these cases to the Eastern District of New York ("E.D.N.Y.").  They claim no particular connection to that forum; to the contrary, they disclaim any connection to it, taking the incongruous position that their preferred forum lacks personal jurisdiction over them.  Taking that position is fatal to their transfer argument: the threshold requirement for transfer under 28 U.S.C. §1404(a) is that the case "might have been brought" in the transferee forum. A court that (purportedly) lacks jurisdiction over the defendant is not a court in which Plaintiffs' claims "might have been brought," dooming Defendants' motion from the start.

Given Defendants' claim that they lack any legally relevant connection to E.D.N.Y., it is unsurprising that they make no serious effort to satisfy the "convenience" factors that govern transfer analysis under §1404(a).  They do not assert that E.D.N.Y. is more convenient for them—they could not, having argued that they have no contacts there—and they identify no evidence or witnesses in that forum.  Their claims that E.D.N.Y. is more convenient for *Plaintiffs* have no basis beyond their own speculation and the fact that a handful of Plaintiffs—less than one-half of one percent—reside in New York (and only a third of that number in E.D.N.Y.). They ignore the fact that every plaintiff in both *Chand* and *Davis*—including the few residing in New York—are already litigating claims in this District, making their choice of this forum not

only proper but practical.  And they ignore the inexorable facts of geography, which establish

that this District is closer to, and more accessible for, the large majority of the 859[1] Plaintiffs,

who—although resident in many jurisdictions around the country—are overwhelmingly (by a

count of 788 to 71, *see infra* at 19-20) closer to this District than to E.D.N.Y.  In addition, as

explained below, Plaintiffs plan to call multiple witnesses who are resident in or near this

District, and for whom E.D.N.Y. would be substantially less convenient. Finally, if the cases are

transferred to E.D.N.Y., Plaintiffs' ability to rely on its chosen trial counsel—Michael Gottlieb

of Willkie Farr & Gallagher and Steven Lehotsky of Lehotsky Keller LLP—may be

compromised.

Defendants have only one answer to all this: *Zobay*.  They have wagered that the entire

transfer analysis should be trumped by the existence of a single case in E.D.N.Y. that they claim

(at least six separate times) is "identical" to *Davis* and *Chand*.  They protest too much: *Zobay v.

MTN Group Ltd*. is not "identical" to *Davis* or *Chand*, or even nearly so.  *Zobay* involves

completely different plaintiffs; primarily different defendants; different terrorist attacks; different

affirmative defenses; and perhaps most important, different causes of action, which feature

different elements and different scienter requirements.  That the three cases involve some

overlapping factual allegations does not override the fact that they are not at all the same case,

and that they can be litigated separately without undue injury to judicial efficiency or risk of

inconsistent outcomes.

Defendants accuse plaintiffs of "forum-shopping" without addressing the compelling

reasons for plaintiffs' decision to file in this District.  As noted, Plaintiffs have conventional and

---

[1] Defendants' count of Plaintiffs appears to be incorrect.  Our records indicate a total of 859
Plaintiffs in these actions, plus six guardians of minor-child Plaintiffs and one representative of a
deceased Plaintiff.  *See* accompanying Declaration of Geoffrey Eaton ("Eaton Decl.") ¶5

legitimate reasons for filing suit here, which include not just existing litigation obligations here and geographic proximity but also the pendency of another case in this District that, like *Zobay*, includes some overlapping factual allegations, but unlike *Zobay*, asserts the same cause of action as Plaintiffs assert here: primary liability under the ATA.  If anyone is "forum-shopping" here it is Defendants, who seek to transfer these cases to a forum with which they disclaim any connection, while simultaneously *not* seeking to transfer the claims against MTN Group in another D.D.C. case with some overlapping allegations, in a transparent (albeit fruitless) effort to salvage the magistrate judge's favorable report and recommendation there. *See generally Cabrera v. Black & Veatch Special Projects Corp.*, 2021 WL 3508091 (D.D.C. July 30, 2021).

Defendants' implication that Plaintiffs' counsel does not wish to litigate ATA claims before the Honorable Carol Bagley Amon (E.D.N.Y.) in *Zobay* is absurd on its face.  Judge Amon is a superb jurist who correctly applied the ATA and JASTA in her opinion in *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020), even while other district judges around the country were departing from the text and legislative intent of the ATA and the JASTA.  Indeed, the D.C. Circuit cited Judge Amon's *Bartlett* opinion in *Atchley v. AstraZeneca UK Limited*, 22 F.4th 204 (D.C. Cir. 2022), which was notable for the D.C. Circuit as it cited an unpublished opinion from an out-of-circuit district judge.  But the mere fact that a superb jurist like Judge Amon is presiding over *Zobay* does not support transfer here.[2]

---

[2]  Defendants' implication is also rebutted by the filing of *Lau v. ZTE Corp.*, No. 1:22-cv-01855 (E.D.N.Y. Compl. filed Apr. 3, 2022) (Amon, J.), which was filed by Sparacino PLLC in E.D.N.Y., and designated as related to *Zobay*, **after** *Davis* and *Chand* were filed in D.D.C.  If MTN's conspiracy theory that clients represented by Sparacino PLLC were somehow trying to avoid Judge Amon, undersigned counsel obviously would not have designated *Lau* as related to *Zobay* after filing *Chand* and *Davis* a week prior to *Lau*.

## BACKGROUND

### A.  The Anti-Terrorism Act

Congress enacted the ATA in 1992 to "open[] the courthouse door to victims of international terrorism." S. Rep. No. 102-342, at 45 (1992). The statute serves the dual objectives of "providing victims of terrorism with a remedy" and stopping "the flow of money" to terrorists. *Id*. at 22. Congress thus designed the ATA's civil remedy to impose "liability at any point along the causal chain of terrorism." *Id*.  By authorizing litigation to "cut[] terrorists' financial life-lines," Congress intended to promote "longstanding efforts to reduce global terrorism and thus protect Americans here and abroad." H.R. Rep. No. 115-858, at 3-4 (2018).

In the years after the ATA's enactment, courts implemented Congress's purpose of "cut[ting] the terrorists' lifeline" by imposing liability on terrorist funders. *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 690-91 (7th Cir. 2008) (en banc). Courts have regularly applied the ATA to entities that financed terrorist groups, without requiring victims to trace individual dollars to individual attacks.  Some courts held terrorist funders liable for themselves committing acts of "international terrorism," *e.g.*, *Boim*, 549 F.3d at 689-91, while others held them secondarily liable as aiders-abettors, *e.g.*, *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 645-49 (S.D. Tex. 2011).

In 2016, Congress enacted the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 ("JASTA"), which preserves ATA primary liability while also codifying "causes of action for [secondary] liability." *Id.* §2(a)(4); *see* 18 U.S.C. §2333(a) (primary), (d) (secondary). In recognizing aiding-abetting liability, Congress found that companies that "contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism" should "reasonably anticipate being brought to court in the United States." JASTA §2(a)(6). Its "purpose" was to "provide civil litigants

4

with the broadest possible basis . . . to seek relief against" entities that send resources "directly or indirectly" to terrorists. *Id*. §2(b).

The elements of primary and secondary liability under the ATA are, of course, different. Primary liability has three essential elements: (1) "a U.S. national must have suffered an injury," (2) the defendants must have engaged in "an act of international terrorism," and (3) the "injury must have occurred 'by reason of' the act of international terrorism." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018). Courts interpret the "by reason of" element to require proximate causation of the plaintiff's injury. *See id.* at 273. Primary liability thus requires that the defendant itself have engaged in an "act of international terrorism," which in turn requires proof that it committed a predicate act that involves "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. §2331(1)(A). Primary liability thus requires a showing that the defendant acted with the scienter associated with the underlying criminal violation, and also that the violation was a proximate cause of the plaintiff's injury.

Secondary liability is different. To state an aiding-and-abetting claim under §2333(d)(2), a plaintiff must show that (1) a U.S. national suffered "an injury arising from an act of international terrorism; (2) that the act was committed, planned, or authorized by a designated Foreign Terrorist Organization; and (3) that defendants aided or abetted an act of international terrorism by knowingly providing substantial assistance." *Atchley*, 22 F.4th at 216. There is no requirement that the defendant itself commit a predicate criminal act, or that the defendant's action—as opposed to the action it assisted—proximately cause the plaintiff's injury. As for scienter, "a defendant may be liable for aiding and abetting an act of terrorism if it was generally aware of its

role in an 'overall illegal activity' from which an 'act of international terrorism' was a foreseeable risk." *Id.* at 220 (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860 (2d Cir. 2021)).

### B. *Davis* and *Chand*

The 859 plaintiffs in *Davis* and *Chand* allege only primary liability under the ATA. That is, they allege that the MTN Defendants themselves committed "acts of international terrorism" that proximately resulted in Plaintiffs' injuries. They allege, in relevant part, that:

- The Defendants secretly agreed—and fraudulently concealed that agreement from MTN Group's shareholders—to assist the "security" agenda of Iran's Islamic Revolutionary Guard Corps ("IRGC"), including its Lebanese Hezbollah Division ("Hezbollah") and Qods Force ("Qods Force"), and knowingly entered into and facilitated an effective joint venture with notorious fronts for Hezbollah and the Qods Force (*e.g.*, *Davis* Compl. ¶¶ 3-6, 20, 47, 57, 62, 338-61, 441-48, 452-55, 498, 506, 508-09, 540, 609-10, 719, 721, 948);

- A primary purpose and effect of the Defendants' involvement in that joint venture was to circumvent U.S. sanctions, in knowing violation of U.S. law, to obtain embargoed dual-use technology to aid the "security" activities of Hezbollah and the Qods Force (*e.g.*, *id.* ¶¶ 3, 9, 49, 373-74, 386, 426, 441, 489-97, 511-32);

- The rivers of cash flow generated by the joint venture were intended for use by, and were used by, Hezbollah, the Qods Force, and the IRGC's Sunni terrorist proxies in their terrorist campaigns against Americans in Iraq and Afghanistan (*e.g.*, *id.* ¶¶ 15, 42, 49-52, 382, 384-85, 425, 506-09, 712, 718-24, 1905);

- Defendants further aided the IRGC's "security" agenda in Afghanistan by making illegal direct payments to the terrorists and participating in terrorist attacks, including by deactivating

their cellular towers at the terrorists' request for the express purpose of degrading the American military's counterinsurgency efforts (*e.g.*, *id.* ¶¶ 552-93); and

- The Plaintiffs' injuries suffered in attacks committed by Sunni terrorists were a direct result of Defendants' material support for the terrorist enterprise (*e.g.*, *id.* ¶¶ 55, 946-50, 1902-05).

The attacks at issue *Davis* occurred from 2006 to 2010 in both Afghanistan and Iraq (primarily in Anbar Province) and were committed by Sunni terrorists including al-Qaeda (in Iraq and Afghanistan), al-Qaeda-in-Iraq (which later became ISIS), Ansar-al-Islam, and the Taliban, including its Haqqani Network, which often jointly committed attacks with al-Qaeda in Afghanistan. The attacks at issue in *Chand* occurred in a similar time period in Iraq and were committed by Shiite terrorists comprising Lebanese Hezbollah, the Qods Force, and Jaysh al-Mahdi, including Jaysh al-Mahdi Special Group Ka'taib Hezbollah and Jaysh al-Mahdi Special Group Asaib Ahl Al-Haq.

Plaintiffs expect that the proof in *Davis* and *Chand* will focus primarily on Defendants' fraudulent concealment of their conduct, and whether it effectively tolled the 10-year statute of limitations; whether Defendants' agreements with the IRGC constituted independent "acts of international terrorism"; and whether they acted with the scienter required for the underlying criminal acts.

### C. *Zobay*

In June 2021, a different group of plaintiffs filed an ATA action in E.D.N.Y. against the MTN entities and three entities in the corporate family of ZTE Corporation, a major Chinese telecommunications company. The original complaint in *Zobay v. MTN Group* alleged both primary and secondary liability. Later, the *Zobay* plaintiffs filed an amended complaint that dropped the primary liability claims and added a group of new defendants related to Huawei

Technologies Co., another major Chinese telecommunications conglomerate.  The operative complaint in *Zobay*, filed on February 9, 2022, raises only secondary liability claims against a total of 11 defendants, only three of which are defendants here—and two of the defendants here are not defendants in *Zobay*.[3]

The *Zobay* complaint does include some allegations that overlap with the *Davis* and *Chand* complaints, although Defendants exaggerate the scope of that overlap: 137 (*Davis*) and 120 (*Chand*) "verbatim" paragraphs sounds like a lot, until one considers that the *Davis* and *Chand* complaints include 2,873 and 1,478 paragraphs, respectively, while the *Zobay* complaint includes 1,633—an overlap of 4.8%, 9.3%, and 8.4%, respectively.  Notably, the *Davis* and *Chand* complaints also contain a significant number of allegations that overlap with the complaint in another case pending in this District, *Cabrera*, No. 19-cv-03833 (D.D.C.), in which the MTN Defendants are also defendants.  *Davis* includes 69 paragraphs that appear "verbatim" in Cabrera, while *Chand* includes 52.[4]  Defendants relegate *Cabrera* to a footnote, presumably because its existence undermines their position.  Mot. 6 n.2.

To be fair, some of the factual allegations in these cases and *Zobay* are the same, or substantially so.  All three cases involve MTN Group and its subsidiaries' long-running, highly profitable, and criminal joint enterprise with known front companies for the IRGC and its

---

[3] *Zobay* is properly before the E.D.N.Y. because MTN's two corporate co-conspirators, ZTE and Huawei, have substantial ties to the E.D.N.Y.  Huawei, most obviously, is currently being criminally prosecuted in the E.D.N.Y. for substantially the same behavior at issue in *Zobay*. Given the *Zobay* Plaintiffs' allegations that MTN Group conspired with ZTE and Huawei, and that ZTE and Huawei have substantial ties to the E.D.N.Y., unlike MTN, the respective choices of the *Zobay* Plaintiffs and the *Davis*/*Chand* Plaintiffs were reasonable.  Indeed, if the *Zobay* Plaintiffs had not sued ZTE and Huawei in *Zobay*, they almost certainly would have filed their case against MTN in D.D.C. like every other Plaintiff that has brought suit against MTN, *i.e.*, the Plaintiffs in *Cabrera*, *Davis*, and *Chand*, all of whom sued MTN Group in the D.D.C.

[4] Plaintiffs' comparison methodology is explained in the Eaton Declaration at ¶10.  Defendants do not disclose their methodology, making their conclusions difficult to verify.

terrorist proxies, in connection with which MTN illicitly obtained U.S. dollars, dual-use U.S.

technologies, and U.S. services, which MTN provided to its Iranian counterparties in knowing

violation of U.S. export control laws, and provided hundreds of millions of dollars in funding

that they knew would flow through to Hezbollah, the Qods Force, and their terrorist proxies in

Iraq and Afghanistan.

But the similarities end there.  The cases involve completely different plaintiffs and

mostly different defendants; allege injuries sustained in different terrorist attacks committed by

different terrorist groups in different time periods; and assert different causes of action with

different elements and different scienter requirements.  They even involve at least one different

defense: in *Davis* and *Chand*, Defendants have raised a statute-of-limitations defense that they

have not asserted (and is not available) in *Zobay*.

MTN's similarities point also fails because the *Davis*/*Chand* complaint also reflects a

substantial amount of overlap with the allegations against MTN Group in *Cabrera*, which is

currently pending in this District and which MTN has conspicuously excluded from its forum

shopping efforts.

Moreover, given the nature of the *Zobay* Plaintiffs' JASTA conspiracy allegations, the

relevant evidence against MTN in *Zobay* is likely to heavily feature the conduct of MTN's

corporate co-conspirators, ZTE, Huawei, and their subsidiaries and affiliates, whereas in *Davis*

and *Chand* the activities of ZTE and Huawei are likely to be of no moment to Plaintiffs'

allegations.  Even at the motion-to-dismiss stage, these cases involve issues that are not present

in E.D.N.Y.

Because *Zobay* alleges only secondary liability under the JASTA (in the form of both

aiding and abetting and conspiracy under §2333(d)(2)) as opposed to primary liability under the

ATA, the trial proceedings will necessarily focus on elements not at issue in *Davis* and *Chand*, including the existence and scope of a conspiracy under the JASTA; the role of Foreign Terrorist Organizations in committing, authorizing, or planning the attacks that injured the plaintiffs, as required by the JASTA; and the defendants' "general awareness" of their involvement in unlawful acts from which terrorist attacks were a foreseeable result, which is the JASTA's lesser scienter requirement in comparison to the scienter requirement governing primary liability.

Finally, MTN's conflation of the Plaintiffs in *Zobay*, *Davis*, and *Chand*—but not *Cabrera*—with their counsel, Sparacino PLLC, is also misplaced.  For starters, the primary locus of the inquiry is on the clients, the witnesses, and the courts, ***not*** the lawyers.  Moreover, MTN's premise is unfounded: if *Zobay* and *Davis*/*Chand* were to both go to trial, it is unlikely that any of the attorneys sitting at counsels' table for the Plaintiffs will overlap,[5] and Sparacino PLLC is unlikely to be trial counsel in either matter.

## LEGAL STANDARD

Pursuant to 28 U.S.C. §1404(a), a district court may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice." The inquiry has two parts.  First, the Court must determine whether the case could have been brought in the transferee district. *Sandpiper Residents Ass'n v. U.S. Dep't of Housing & Urban Dev.*, 2021 WL 2582004, at *3 (D.D.C. June 23, 2021)*.  Second, the Court must weigh the private and public interests at stake. *Id*.  The "private" or convenience factors require the Court to consider the "preferred forum of the parties," the "location where the claim arose," and the convenience of the two fora for the parties and witnesses.  *Id.*  The public

---

[5] Sparacino PLLC always partners with elite litigation firms in its terrorism matters, who typically handle things in court after the 12(b) motion (and sometimes before as well).

interest factors include the forum's "familiarity with the governing law," "the relative congestion of the courts," and the "local interest in deciding local controversies at home." *Id.*  The existence of related litigation in either the original or the proposed transferee forum is generally considered under the "public" factors because it aims to vindicate the public interest in judicial economy and avoiding inconsistent results in like cases.

The party moving for transfer has the burden of persuasion on all elements of the analysis. *Id.*

## ARGUMENT

### I.     Defendants Cannot Bear Their Burden To Show That Plaintiffs' Claims "Might Have Been Brought" in New York.

Under §1404(a), transfer is only available to a district "where it might have been brought," in the sense that "the intended transferee court has personal jurisdiction and is an appropriate venue."  *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 172 (D.D.C. 2016) (quoting *Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 104 (D.D.C. 2013)). As the moving parties, Defendants bear the burden of proving that E.D.N.Y. has personal jurisdiction over them.  *Intelect*, 160 F. Supp. 3d at 171; *see also, e.g.*, *Volkswagen De Mexico, S.A. v. Germanischer Lloyd*, 768 F. Supp. 1023, 1028-29 (S.D.N.Y. 1991).

Defendants cannot bear that burden.  As they acknowledge, "[i]n the Eastern District of New York, MTN Group has moved to dismiss *Zobay* for lack of personal jurisdiction."  Mot. 13. By taking the position that E.D.N.Y. lacks personal jurisdiction over them, they have forfeited any opportunity to prove that Plaintiffs' suit "might have been brought" there.  *Intelect*, 160 F.

Supp. 3d at 171. Their motion thus fails the threshold requirement for transfer under §1404(a) and must be denied.

Nothing in Defendants' motion suggests that they may simultaneously assert both that Plaintiffs' case "might have been brought" in E.D.N.Y. and that it could *not* have been brought there because that court lacks jurisdiction over the Defendants.  The only authorities they cite involve defendants who *consented* to personal jurisdiction in the transferee court, eliminating that incongruity.  In *Orbital Australia Pty Ltd v. Daimler AG*, 2015 WL 4042178, at *2 (E.D. Va. July 1, 2015), the defendants moved to dismiss the case for lack of personal jurisdiction in the Eastern District of Virginia and transfer it to the Eastern District of Michigan, where the defendants were "willing to submit to jurisdiction … in order to have all of [the plaintiff's] allegations addressed before a single court."[6]  The same was true in *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574 (N.D. Cal. 2020), in which defendant Phillips "identif[ied] the district court for the District of Massachusetts as the alternative forum and state[d] that Phillips consent[ed] to personal jurisdiction in that court." *Id*. at 582.  A forum in which the defendant has agreed not to challenge personal jurisdiction is at least arguably a forum in which the plaintiff's claims "might have been brought."  A forum in which the defendant plans to contest jurisdiction is not.  In fact, Defendants cite no fewer than 33 cases in support of their motion, and not one grants (or even seeks) transfer to forum in which the movant contested personal jurisdiction.

---

[6] Memorandum in Support of Defendants Mercedes-Benz USA LLC and Mercedes-Benz U.S. International, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Transfer to the Eastern District of Michigan, *Orbital Australia Pty Ltd v. Daimler AG,* 2015 WL 4537799, at 2, 17 (E.D. Va. Feb. 27, 2015).

In short, Defendants have identified no precedent for the maneuver MTN is trying to pull off here—arguing in this Court that Plaintiffs' claims "might have been brought" in E.D.N.Y. only to argue in E.D.N.Y. that the claims could *not* have been brought there.[7] If Defendants can manipulate the transfer rules this way, then the "might have been brought" requirement of §1404(a) has no meaning. The motion should be denied on this basis alone.

## II.  The Private and Public Factors Do Not Favor Transfer.

If Defendants could somehow show that Plaintiffs' claims "might have been brought" in E.D.N.Y. not withstanding MTN's insistence that E.D.N.Y. lacks jurisdiction, "[t]he second step in the Section 1404 analysis requires that the Court decide whether the private and public interests favor transfer." *Saxton v. McDonough*, 2022 WL 136796, at *3 (D.D.C. Jan. 14, 2022). "The private interests include the 'preferred forum of the parties,' 'the location where the claim arose,' and 'other factors of convenience,' … while the public interests include 'the transferee district's familiarity with the governing law,' 'the relative congestion of the courts,' and the 'local interest in deciding local controversies at home.'" *Id.* (citations omitted). As the moving

---

[7] In this connection, Plaintiffs note that if Defendants are somehow successful in pulling off this bit of jiu-jitsu and obtaining the transfer they seek, they will be estopped from contesting personal jurisdiction in the E.D.N.Y. *Beauty Plus Trading Co., Inc. v. I & I Hair Corp*, 2020 WL 6156285, at *4 (D.N.J. Oct. 21, 2020) ("Defendant, by bringing this motion to transfer … necessarily concedes that it would be subject to in personam jurisdiction" in the transferee venue); *see also, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc*., 2011 WL 1327137, at *3 (S.D.N.Y. Mar. 31, 2011) ("In arguing for transfer to the Southern District of New York, Defendants necessarily, although implicitly, argued that this Court had personal jurisdiction over them at the time Plaintiff originally filed suit," such that having prevailed on that motion "Defendants are estopped from now arguing that this Court lacks personal jurisdiction."). In fact, many courts have ruled that the mere act of filing a motion to transfer concedes personal jurisdiction in the proposed transferee court. *See, e.g.*, *21 srl v. Newegg Inc.*, 2010 WL 1178066, at *3 n.2 (N.D. Ill. Mar. 24, 2010). Plaintiffs have raised the waiver issue with the *Zobay* court as a basis for denying Defendants' motion to dismiss that case.

party, Defendants bear the burden of proving that the "private" and "public" interest factors favor transfer.  *Garcia v. Acosta*, 393 F. Supp. 3d 93, 108 (D.D.C. 2019).

A.      **The Private Interest Factors Do Not Favor Transfer**

1.      **Plaintiffs' choice of this forum is entitled to deference.**

In the ATA, Congress enacted a special venue statute that permits plaintiffs to file suit in any venue where "any plaintiff resides."  18 U.S.C. §2334(a).  The plaintiffs in both *Davis* and *Chand* include at least one resident of the District of Columbia, and both groups of plaintiffs chose to file their claims here.  "A plaintiff's choice of forum is generally afforded 'substantial deference.'"  *Sandpiper Residents Ass'n,* 2021 WL 2582004, at *3 (citation omitted).

It is true, as Defendants suggest, that "deference to a plaintiff's choice of forum is lessened when the plaintiff's choice is not the plaintiff's home forum."  *Id*.  But this *is* the "home forum" of multiple plaintiffs; that it is not the home forum of *all* the plaintiffs does not eliminate the deference traditionally afforded their choice.[8]  Plaintiffs' choice of venue is particularly consequential where, as here, Congress has created a special regime designed to give plaintiffs greater control over the litigation venue.  *See Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985) ("Since Congress has enacted a special venue provision" to benefit plaintiffs, "the burden on the defendants [moving to transfer] in this case is especially heavy.").

---

[8] Defendants also point out that only three *Davis* and *Chand* plaintiffs reside in this District (the correct number is actually four—*see* Eaton Decl. ¶6), while seven reside in E.D.N.Y.  But there are 859 plaintiffs in *Davis* and *Chand*; the number that live in either D.D.C. or E.D.N.Y. is less than half of one percent of the total.  Defendants do not explain why seven is a meaningfully larger number than four for forum-determination purposes, when in either case more than 99.5% of the plaintiffs reside in neither forum.

Defendants also argue that deference should be eliminated because "this forum has no connection to the parties' dispute." Mot. 24. But ATA cases will often have limited connections to any specific forum: by definition, ATA claims are based on acts of terrorism that occur "primarily outside the territorial jurisdiction of the United States," 18 U.S.C. §2331(1)(C), and the only jurisdictional contacts required are contacts with the United States as a whole—not any particular district. There is no reason to eliminate the deference afforded Plaintiffs' choice of forum in circumstances where their allegations will rarely be closely connected to any particular U.S. forum. And in any event, "even if Plaintiffs' choice of forum might receive *less* deference … their permissible choice of forum is still entitled to *some* deference, and the burden of persuasion remains with [Defendants]." *Sandpiper Residents Ass'n*, 2021 WL 2582004, at *3 (emphasis original).

Unwilling to provide even some deference to plaintiffs who filed their claims where Congress told them to, Defendants insist that "the Court should give the Plaintiffs' choice of forum *no weight at all* given their counsel's blatant forum shopping." Mot. 24. But "the plaintiff is entitled to select the forum in which he wishes to proceed," *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 413 (D.C. Cir. 2014), and Plaintiffs' selection of this forum is rooted in legitimate considerations.

*First*, every plaintiff in *Chand*—including the six who reside in E.D.N.Y. and the six who reside elsewhere in New York —is already litigating an unrelated terrorism case in this District.[9] The same is true of every plaintiff in *Davis*, including the nine New York-based *Davis* plaintiffs

---

[9] *See Third Amended Complaint, Atchley v. AstraZeneca UK Ltd.,* No. 1:17-cv-02136 (D.D.C.) (filed Jan. 21, 2020). The New York-based *Chand* plaintiffs who are also plaintiffs in *Atchley* are Johnny Castillo, Christopher Francis Cote, Francis Louis Cote, Nancy M. Cote, Samantha G. Dunford, Armando Fuentes, Daniel Jonathan Fuentes, Julio Fuentes, Nancy Fuentes, Tatyana Fuentes, Emma McGarry, and Lisa Ramaci.

(only one of whom is resident in E.D.N.Y.) [10]  All told, every one of the 859 Plaintiffs are currently involved in unrelated litigation in this District; just 236 are currently litigating in E.D.N.Y.  Given the large number of plaintiffs with ongoing litigation in this District, bringing these cases here was a logical and convenient choice.[11]

 *Second*, although *Davis* and *Chand* share some factual overlap with *Zobay*, *Chand* also shares some factual overlap with *Cabrera*, which is pending in this District (and which, presumably for strategic reasons, Defendants have not claimed is related to *Chand* or *Zobay* despite substantial overlapping allegations).

 *Third*, as explained below, this District is geographically more convenient for both Plaintiffs and their likely trial witnesses.

 *Fourth*, Defendants ignore that one of the central allegations in *Zobay*—that MTN Group joined a conspiracy alongside ZTE Corp. and Huawei Co.—readily explains the forum choices made by Plaintiffs in *Zobay*, *Davis*, and *Chand*, respectively, because ZTE's and Huawei's connections to the E.D.N.Y. are overwhelming.  Indeed, Huawei is currently being prosecuted there—the rare example of a corporation going to a criminal trial.

 Given that all the *Chand* plaintiffs and many *Davis* plaintiffs were already litigating in

---

[10] *See* Complaint*, Martino v. Islamic Republic of Iran*, No. 1:21-cv-01808-RDM (filed July 7, 2021) and Second Amended Complaint for Violation of the Foreign Sovereign Immunities Act, *Cabrera*, No. 1:19-cv-03835 (D.D.C.) (filed Feb. 23, 2021).  The New York-based *Davis* plaintiffs who are also plaintiffs in the *Cabrera* FSIA action are Amy Lynette Allen, Daniel Bruce Allen, Rana Goodrich Allen, Aidan Cleaver, Collin Cleaver, John M. Finley, Christopher Alexander Palmateer, and Marjorie Vail.

[11] It should also hardly be surprising that Sparacino PLLC, a Washington, D.C.-based law firm, would represent plaintiffs in Washington, D.C.-related matters.  Indeed, most of the terrorism-related cases in which Sparacino PLLC has served as lead investigative counsel have been filed, and are being litigated, in Washington, D.C., including *Atchley*, *Cabrera v. Black & Veatch*, *Cabrera v. Islamic Republic of Iran*, *Martino v. Islamic Republic of Iran*, *Chand v. MTN Irancell*, *Davis v. MTN Irancell*, and other cases.

this District; that a lawsuit raising similar allegations regarding the MTN Defendants' conduct in Afghanistan was already pending here; that even the New York-based *Davis* plaintiffs were all already litigating here, too; and that this forum is more convenient for Plaintiffs and their witnesses, it would have made little sense to bring these cases in E.D.N.Y.

The sole basis for Defendants' claim of "blatant forum shopping" is a single question from Judge Amon in an early *Zobay* hearing, in which she asked counsel to explain the basis for the primary-liability claim pleaded in the original *Zobay* complaint (and later dropped after the *Zobay* plaintiffs added a large number of new allegations against additional defendants). Mot. Ex. C at 10-11. Nothing about the question suggested hostility to the claim; she also asked about the basis for the plaintiffs' individual claims against MTN and its co-defendants, whether the defendants were properly joined, the nature of the plaintiffs' aiding-and-abetting claim, and the scope of ATA jurisdiction. *Id*. at 4-10. Defendants' theory that the *Zobay* plaintiffs dropped their primary-liability claims and re-filed them here (on behalf of different plaintiffs) because of Judge Amon's question is pure speculation, and anyway makes no sense: if the *Zobay* plaintiffs were frightened into dropping their primary-liability claims by one innocuous question from the bench, then the *Davis* and *Chand* plaintiffs surely would not have brought that claim to this District, where a district judge and a magistrate judge recently addressed such claims twice and (wrongly) dismissed them both.[12]  *See Cabrera*, 2021 WL 3508091, at *23-24; *Atchley v.*

---

[12] This distinguishes the present cases from Defendants' primary anti-forum-shopping case, *Schmid Labs., Inc. v. Hartford Acc. & Indem. Co.*, 654 F. Supp. 734 (D.D.C. 1986). There, a New Jersey-based plaintiff sued a Connecticut-based insurer in this District for the express purpose of taking advantage of more favorable local law. Here, Plaintiffs are not aware of any reason to believe that their primary liability claims will be subject to different legal analysis here than they would in E.D.N.Y., and brought their claims here for conventional reasons relating primarily to convenience. In *Schmid*, the convenience factors heavily favored transfer to New York. *Id*. at 737 and n.8. Not so here—*see infra* at 19-24.

*AstraZeneca UK Limited*, 474 F. Supp. 3d 194 (D.D.C. 2020), *rev'd on other grounds*, 22 F.4th 204 (D.C. Cir. 2022)).

Plaintiffs here hail from at least 75 different districts (out of a total of 94 in the entire United States), and Congress specifically chose to permit them to file their claims in any one of them.  There were ample reasons to file them here.  That is not "forum-shopping"; it is sound litigation practice.  Plaintiffs' choice of venue is entitled to deference, and should not be denied merely because a different group of plaintiffs chose to file different claims against a mostly different group of defendants in a different venue.

### 2.    Plaintiffs' claims did not "arise" in the Eastern District of New York.

The second "private interest" factor considers "the location where the claim arose," or which forum "encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute."  15 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure §3854 (4th ed.), Westlaw (database updated Apr. 2022).  "Courts in this district have held that claims 'arise' under 28 U.S.C. §1404(a) in the location where … most of the significant events giving rise to the claims occurred."  *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013) (citations and quotations omitted).

Defendants strain to assert that the locus of operative facts is E.D.N.Y., pointing to personal-jurisdiction allegations that describe conduct "in New York."  Mot. 22-23.  Their effort fails. As a threshold matter, Defendants deny those allegations, making this an awkward basis for arguing that "New York" is "the location of material events" underlying Plaintiffs' claims. *Martinez v. Deutsche Bank AG*, 2017 WL 1366048, at *5 (S.D. Ill. Apr. 12, 2017).  And Defendants certainly cannot (and do not) claim that "*most* of the significant events giving rise to [Plaintiffs'] claims" occurred there.  *Douglas*, 918 F. Supp. 2d at 32 (emphasis added).

Moreover, Defendants' argument elides the fact that none of the "New York" contacts are

alleged to be in the *Eastern District* of New York.  The financial transactions that form part of

one of Plaintiffs' jurisdictional allegations were undertaken with major financial institutions

(including Citibank and Bank of New York) which appear to be located in the Southern

District.[13]  Contacts in adjacent fora are generally not relevant to the transfer analysis.  *See*

*Sandpiper Residents Ass'n*, 2021 WL 2582004, at *4 (declining to transfer case to Northern

District of Texas where defendant's contacts were in the Southern District of Texas).[14]

In truth, the "locus of operative facts" underlying Plaintiffs' claims is scattered across the

world, from Iraq to Afghanistan (where the attacks occurred) to Iran and South Africa (where the

MTN Defendants met and conspired with the IRGC) to the entire United States (where MTN

sourced embargoed U.S. technology for its Iranian partners in knowing violation of U.S. law).

Anti-Terrorism Act cases are matters of national, not local concern, making this District—the

home district of the national government—the best available proxy for a true "locus of operative

facts."  *See, e.g.*, *Ctr. for Biological Diversity v. Tidwell*, 2017 WL 6334085, at *2 (D.D.C. Feb.

24, 2017).  Defendants have not carried their burden to show that this factor favors transfer.

### 3. The convenience of the parties favors keeping these cases in D.C.

As explained, *all* of the plaintiffs in these cases are already litigating claims in this

District, including the plaintiffs residing in New York.[15]  *Supra* at 15-16.  Although Plaintiffs are

---

[13] It is Defendants' burden to establish that those contacts were actually in the Eastern District, and they have not done so.

[14] If Defendants wish to play the adjacent-forum game, Plaintiffs can point out that an additional 32 plaintiffs reside in the Eastern District of Virginia and the District of Maryland, both of which border this District.

[15] Defendants knew this—Plaintiffs explained it in their opposition to Defendants' notice of related case—making it rather disingenuous of them to assert that "there is no reason to believe that it would be more convenient for Plaintiffs to litigate *Davis* and *Chand* in this District rather than in the Eastern District of New York."  Mot. 21.

scattered throughout the country, they are, on average, significantly closer to Washington, D.C. than to Brooklyn, New York: of 859 plaintiffs, 788 are closer to Washington, and just 71 are closer to E.D.N.Y.  *See* Eaton Decl. Exhibits A, B.  And this matters for practical reasons: plaintiffs are primarily military families of limited means, and many suffered serious wounds and contend with significant disabilities.  Air travel is likely to be a hardship for many, making driving distance an important consideration here.

Defendants are foreign companies and individuals who have claimed no relevant contacts to E.D.N.Y.  In fact, they have identified nothing "convenient" about E.D.N.Y. except that three of them are already litigating similar issues there.  But those three are also already litigating similar issues here.  In any event, Defendants are double-dipping: the existence of a purportedly related case is generally considered under the "public interest" analysis, and is not relevant to the "convenience" factor.

Another issue warrants careful attention here.  Upon resolution of Defendants' motions to dismiss in all three cases, primary responsibility for the litigation will shift from Sparacino PLLC to trial counsel at larger firms.  *See* Eaton Decl. ¶2.  The plaintiffs in *Chand* and *Davis* have selected Willkie Farr & Gallagher LLP and Lehotsky Keller LLP as their trial counsel (led by Michael Gottlieb and Steven Lehotsky, respectively).[16]  *Id*. ¶3.  If the matter is transferred to EDNY, Plaintiffs' ability to rely upon those firms as their counsel may be compromised, such that if these cases were transferred to E.D.N.Y. and consolidated with *Zobay*, Plaintiffs may be forced to retain new counsel.  *Id*. ¶4.  Both Willkie and Lehotsky Keller are trial firms of exceptional quality—one of which is already deeply immersed in similar litigation against

---

[16] This should come as no surprise to Defendants, given that Willkie is already representing the plaintiffs in *Cabrera*, in which they are also defendants.

Defendants in this District—and Plaintiffs should not be deprived of their choice of counsel for the Defendants' purported convenience.

### 4.  The convenience of witnesses favors keeping these cases in D.C.

Defendants identify no potential witnesses in E.D.N.Y, confining themselves instead to nebulous references to Plaintiffs' allegations about Defendants' jurisdictional contacts with "New York" (which they mention, only to then swiftly deny). They do not suggest that anyone plans to call witnesses based on those contacts, which—as already noted—are not alleged to be (and are not) in E.D.N.Y. anyway.  This is not good enough: as one of Defendants' primary authorities explains, "[p]roper consideration of this factor requires the movant to identify with specificity the witnesses it intends to call at trial and the general content of their proposed testimony."  *Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 233 (E.D.N.Y. 1994).

Plaintiffs are also aware of no witnesses located in E.D.N.Y.  But they plan to call a significant number of witnesses who are located in or near this District.  The table below includes a non-exclusive list of witnesses[17] that Plaintiffs may call at trial:

| Potential Witness Name | Organization | Location | Fact or Expert | Subject Matter | Distance to D.D.C. | Distance to E.D.N.Y. |
|---|---|---|---|---|---|---|
| Ms. Gretchen Peters | Center on Illicit Networks and Transnational Organized Crime | Washington, DC | Expert | Liability | 3 miles | 229 miles |
| LTC Steve Wood (US Army, Ret.) | U.S. Special Operations Command | Miamisburg, OH | Expert | Liability | 485 miles | 638 miles |
| The Hon. Juan C. Zarate | Center for Strategic and International Studies | Washington, DC | Expert | Liability | 3 miles | 229 miles |

---

[17] While this list is not exhaustive, and Plaintiffs expect a substantial number of additional potential witnesses to be added, Plaintiffs are not aware of a single fact or expert witness who resides in the E.D.N.Y.

| Potential Witness Name | Organization | Location | Fact or Expert | Subject Matter | Distance to D.D.C. | Distance to E.D.N.Y. |
|---|---|---|---|---|---|---|
| SGM Glenn Patti (U.S. Army, Ret.) | Applied Research Associates | Pinehurst, N.C. | Expert | Liability | 335 miles | 564 miles |
| Mr. Daveed Gartenstein-Ross | Foundation for the Defense of Democracies | Washington, DC / Winston-Salem, NC | Expert | Liability | 3 miles (DC) / 336 miles (NC) | 229 miles (DC) / 566 miles (NC) |
| Mr. Bill Roggio | Foundation for the Defense of Democracies | Washington, DC / Poconos, PA | Expert | Liability | 3 miles (DC) / 234 miles (PA) | 229 miles (DC) / 117 miles (PA) |
| Dr. Colin Clarke | The Soufan Group | Washington, DC / Pittsburgh, PA | Expert | Liability | 3 miles (DC) / 257 Miles (PA) | 229 miles (DC) / 394 miles (PA) |
| Representative or designee | U.S. Department of State | Washington, DC | Fact | Liability | 2 miles | 228 miles |
| Representative or designee | U.S. Department of Defense | Arlington, VA | Fact | Liability; Damages | 4 miles | 230 miles |
| Representative or designee | U.S. Department of the Treasury | Washington, DC | Fact | Liability | 1 mile | 227 miles |
| Representative or designee | U.S. Agency for International Development | Washington, DC | Fact | Liability | 1 mile | 227 miles |
| Representative or designee | U.S. Department of Justice | Washington, DC | Fact | Liability | 1 mile | 227 miles |
| Representative or designee | Joint Improvised-Threat Defeat Organization (f/k/a Joint IED Defeat Organization) | Arlington, VA | Fact | Liability; Damages | 4 miles | 230 miles |
| Representative or designee | U.S. Department of Commerce | Washington, DC | Fact | Liability | 1 mile | 227 miles |

| Potential Witness Name | Organization | Location | Fact or Expert | Subject Matter | Distance to D.D.C. | Distance to E.D.N.Y. |
|---|---|---|---|---|---|---|
| Representative or designee | U.S. Securities and Exchange Commission | Washington, DC | Fact | Liability | 1 mile | 227 miles |
| Representative or designee | World Bank | Washington, DC | Fact | Liability | 2 miles | 228 miles |
| Representative or designee | International Finance Corporation | Washington, DC | Fact | Liability | 2 miles | 228 miles |
| Representative or designee | Covington & Burling LLP (Washington, DC Office) | Washington, DC | Fact | Liability | 1 mile | 227 miles |
| Representative or designee | Deutsche Bank | New York, NY | Fact | Liability | 228 miles | 2 miles |
| Representative or designee | Citibank | New York, NY | Fact | Liability | 228 miles | 2 miles |
| Representative or designee | Bank of New York | New York, NY | Fact | Liability | 228 miles | 2 miles |
| Mr. Phuthuma Nhleko | MTN Group Ltd. (Ret.) | South Africa | Fact | Liability | N/A | N/A |
| Ms. Irene Charnley | MTN Group Ltd. (Ret.) | South Africa | Fact | Liability | N/A | N/A |
| Mr. David Plouffe | None | San Francisco, CA | Fact | Liability | 2,816 miles | 2,904 miles |
| Representative or designee | Special Inspector General for Afghanistan Reconstruction | Arlington, VA | Fact | Liability | 4 miles | 230 miles |
| Representative or designee | Special Inspector General for Iraq Reconstruction | Washington, DC | Fact | Liability | 4 miles | 230 miles |
| Confidential Witness 1 | N/A | Dubai, U.A.E. | Fact | Liability | N/A | N/A |
| Confidential Witness 2 | N/A | Canada | Fact | Liability | N/A | N/A |

As the table shows, a significant portion of Plaintiffs' evidence will be presented through representatives of federal agencies with highly developed expertise in international terrorism and terrorist financing, nearly all of whom are located in or near Washington, D.C.  Several others are employees of think tanks and consultancies that are also based in or near Washington, D.C.  In total, of the 24 potential witnesses located in the United States, only three—Deutsche Bank, Citibank, and Bank of New York—are definitively closer to E.D.N.Y., and two others would be slightly closer to that district *if* distance were measured from their home address rather than their work address.  Of the rest, one is in California and essentially equidistant.  The other 18—85%— are significantly closer to D.C.

In the absence of any known witnesses in E.D.N.Y., this factor weighs heavily in favor of denying transfer.

**B.      The Public Interest Factors Do Not Favor Transfer**

**1.      The relative congestion of the two courts' caseloads favors keeping the cases in D.C.**

Defendants neglect to address the "relative congestion of the courts" factor—presumably because the relevant Administrative Office statistics heavily favor D.C.  For the year ending December 31, 2021, the median time to decision in this District was 5.5 months; in E.D.N.Y, 7.2 months.[18]  For cases that went to trial, the difference is even starker: median time to decision in this District was 37.3 months, compared to E.D.N.Y.'s 55.9 months—a difference of more than a year and a half.[19]  Given that the operative complaints in all three cases were filed within eight

---

[18] *See* Administrative Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C-5 (Dec. 31, 2021), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/12/31, col. C-10, C-20.

[19] *Id*. at col. K-10, K-20.

weeks of one another, this factor heavily favors denying transfer.

### 2.    The two courts are equally familiar with the governing law.

Both this Court and E.D.N.Y. have extensive experience adjudicating terrorism-related claims, and federal courts are presumed to be equally competent in matters of federal law. *E.g.*, *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007).

Defendants' attempt to imbue Judge Amon of E.D.N.Y. with deep knowledge of these specific cases is not well taken: Plaintiffs have the utmost respect for Judge Amon, but she has made no substantive rulings in *Zobay*, which for practical purposes is only about a month ahead of these cases.[20]  This factor is neutral and does not favor transfer.

### 3.    These cases do not involve any local controversies.

As noted, these cases are rooted in events that occurred overseas and throughout the United States.  They are not "local controversies," and neither this Court nor E.D.N.Y. has a specific local interest in resolving them.  This Court has held that even where a case has "both nationwide and local concerns," this factor weighs against transfer. *Ctr. for Biological Diversity*, 2017 WL 6334085, at *2.  Terrorism against Americans is a matter of nationwide concern, and there are no counterbalancing local concerns in E.D.N.Y.  This factor therefore disfavors transfer.

### 4.    *Zobay* is materially different than these cases and does not justify transfer.

Defendants claim no particular connection to E.D.N.Y. (to the contrary, they disclaim it in *Zobay*), and have identified no credible conveniences for any party or witness from

---

[20] The complaints in these cases were filed on March 27, 2022, and Defendants' motion to dismiss was filed on May 26, 2022.  The operative complaint in *Zobay* was filed on February 9, 2022, and two Defendants' motions to dismiss were filed on April 25, 2022.  The remaining defendants in *Zobay* are not scheduled to file their dispositive motions until August, making that case in some ways *behind* these cases.

transferring the case there.  Instead, Defendants' hope for transfer depends entirely on the

pendency of the *Zobay* litigation, which they pervasively describe as "materially identical,"

"nearly identical," "substantively identical," and (once) simply "identical" to these cases.  Mot.

1, 2, 9, 11, 14, 15, 20.  Even if the cases were identical, more would be required: "the existence

of a related case in another jurisdiction may be relevant," but of itself is "insufficient grounds for

transfer."  *Abbey v. Modern Africa One, LLC*, 305 B.R. 594, 604 (D.C. Bankr. 2004) (citation

omitted).  But here, the cases are self-evidently *not* identical.  They differ in material ways that

substantially undermine the rationales for transferring related cases, which are generally said to

include avoiding "duplicative" litigation and, perhaps more important, avoiding inconsistent

judgments in which like cases reach conflicting results.  *See, e.g.*, *Defenders of Wildlife v. Jewel*,

74 F. Supp. 3d 77, 86 (D.D.C. 2014).

  *First*, as even Defendants admit (begrudgingly, in a footnote), the cases involve different

causes of action.  *Davis* and *Chand* allege only primary liability (committing acts of terrorism),

while *Zobay* alleges only secondary liability (aiding and abetting and conspiracy).  This

difference necessarily makes the cases non-"duplicative": they feature different elements and

different scienter requirements.  For example, the secondary liability claims in *Zobay* require

Plaintiffs to prove that a designated FTO "committed, planned, or authorized" the act of

terrorism that injured each plaintiff.  18 U.S.C. §2333(d)(2).  The primary liability claims in

*Davis* and *Chand* have no such requirement.[21]

---

[21] Defendants admit this.  *See* MTN Defendants' Response to Plaintiffs' Objection to Notice of
Related Case, D.I. 20 (May 12, 2022) (arguing that the *Chand* plaintiffs cannot rely on *Atchley*
because "that ruling concerned language in the ATA that limits secondary liability … to acts of
international terrorism 'committed, planned, or authorized' by" an FTO, and "the FTO limitation
on secondary liability claims does not apply to … direct liability claims.").

The different causes of action automatically take one ground for transfer—the "first-filed rule"—out of play.  *See, e.g.*, *Abbey,* 305 B.R. at 603 (first-filed rule "does not apply here, since the adversary proceeding now pending in the Bankruptcy Court is not the same cause of action as the case here").  They also greatly reduce the potential for judicial inefficiencies if the cases are litigated separately, because there will be significant departures in the evidence needed to prove the divergent claim elements at trial.  More important, the differences in the cause of action eliminate (or at least greatly reduce) the possibility of inconsistent outcomes.  It is entirely possible for Defendants' conduct to result in liability for conspiracy or aiding and abetting but not for directly committing an act of terrorism, and the reverse is also true.  Neither result would necessarily contradict or undermine the other.  Defendants cite a litany of cases (Mot. 19-20) decrying the possibility of inconsistent judgments, but never explain how these *particular* cases, which assert different causes of action, could result in inconsistent outcomes.

*Second*, the cases involve different parties.  There is no overlap among the *Davis/Chand* plaintiffs and the *Zobay* plaintiffs, and only partial overlap among the defendants: *Davis* and *Chand* only involve the corporate MTN Defendants and two individual MTN officers, while *Zobay* includes only the corporate MTN Defendants and eight unrelated corporate defendants who have no interest in Plaintiffs' primary-liability claims against the corporate and individual MTN Defendants.

*Third*, the three actions involve different acts of terrorism.  The *Zobay* plaintiffs were each injured in one of twelve specific terrorist attacks occurring between 2011 and 2019.  The *Davis* plaintiffs were each injured in one of 95 specific attacks by Sunni terrorists between 2006 and 2010, and the *Chand* plaintiffs in one of 14 different attacks by Shiite terrorists between

2006 and 2009.[22]  The attacks were committed, planned, and authorized by a wide variety of different (albeit frequently related) terrorist groups.  The specific facts of all those attacks and the groups that committed them must be proved to establish liability, and there are few efficiencies to be gained by lumping them into a single action in New York.

*Fourth*, the cases involve different defenses.  In *Davis* and *Chand*, the MTN Defendants have raised statute-of-limitations defenses in their motions to dismiss that, if successful, could dispose of those cases in their entirety.  No such defense has been raised by (or is available to) the MTN Defendants in *Zobay*.  The *Davis* and *Chand* plaintiffs must prove that the MTN Defendants fraudulently concealed their activity or otherwise tolled the statute of limitations—an issue that would have no relevance at all to the *Zobay* allegations against Defendants.  It makes little sense to send these cases to E.D.N.Y. before resolving motions to dismiss that are unique to these cases.

These differences dramatically undermine the extent of duplication between the cases and all but eliminate the possibility of inconsistent outcomes.  Unsurprisingly, of the 33 cases Defendants cite in support of transfer, none supports transfer based on the existence of other litigation where, as here:

- The moving party disclaims any connection to (and contests personal jurisdiction in) the transferee forum;

---

[22] This difference in timeframe is highly consequential to the evidence that Plaintiffs intend to present in the respective cases:  the nature of the terrorist campaigns in Iraq and Afghanistan, particular attack strategies, preferred geographies, modalities of terrorist finance and logistics, and leadership of the relevant terrorist groups are all different.  For example, Osama bin Laden led al-Qaeda during the relevant period at issue in *Chand* and *Davis* (which concern attacks prior to 2011) but did not lead al-Qaeda during the period at issue in *Zobay*. Similarly, Sirajuddin Haqqani was a minor player on the jihadist scene as of 2006 (*Davis*) but was the most important al-Qaeda/Taliban/Haqqani terrorist in the world by 2011 (*Zobay*).

- The purportedly related case in the transferee jurisdiction involves completely different plaintiffs, primarily different defendants, and a different cause of action;

- The proposed transferee court has made no substantive rulings in the purportedly related case and the cases are in a similar stage of development (motions to dismiss filed but not yet fully briefed);

- There is similarly "related" litigation involving the defendants pending in the original jurisdiction;[23]

- A majority of the defendants and a large plurality of the plaintiffs are already litigating in the original forum; and

- The parties have identified multiple witnesses in and near the original forum, but none in the proposed transferee forum.

Consider the authorities on which Defendants rely.  Their citations to those authorities are almost all of the sound-bite variety, and a review of the cases reveals why: they are all readily distinguishable.  Nearly all involve claims—not just factual allegations—described as "essentially identical," resulting in a risk that litigating them separately would produce contradictory results.[24]  None grants transfer based on a "related" case that asserts a different

---

[23] Plaintiffs do not believe the *Cabrera* litigation is a related case, but under the logic of Defendants' argument—that cases are necessarily related if they involve some overlapping factual allegations—it would be.

[24] *E.g.*, *Barham,* 496 F. Supp. 2d at 180-81 ("essentially identical" claims of racial discrimination); *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 404-05 (E.D.N.Y. 2009) (applies the "first-filed rule," which applies only to identical causes of action); *Calif. Farm Bureau Fed'n v. Badgley*, 2005 WL 1532718, at *1-3 (D.D.C. June 29, 2005) (cases involved "apparently identical issues of law and fact"); *Cain v. Twitter, Inc.*, 2017 WL 1489220, at *3 (S.D.N.Y. Apr. 25, 2017) ("all [ATA] claims asserted in the California Action … are [also] asserted here."); *Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, 2017 WL 6760811, at *1-3 (S.D. Fla. Oct. 4, 2017) (plaintiffs in transferee forum raised "the same causes of action" and allegations against the same defendant); *Coultman*, 857 F. Supp. at 232 (plaintiffs in transferee

cause of action.  In the rare cases where a court transfers a case to another court that is presiding

over litigation that is only factually related, the court invariably finds that the other transfer

factors also weigh heavily in favor of the transferee venue.  *E.g.*, *Comptroller v. Calhoun First*

*Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C.1985) (transferring case based on factual similarity to

multiple pending cases in transferee district, where all the defendants, 65 of 67 potential

witnesses, and the relevant evidence were all located there, and the events giving rise to the

plaintiff's claim occurred there).

Even where there is total or near-total overlap in legal issues, Defendants' authorities

overwhelmingly grant transfer only where the case's connections to the transferee forum heavily

outweigh its connections to the original forum.  For example, in *Barham* (cited at Mot. 15, 16,

24), the court approved transfer where the claims at issue were "essentially identical," the

transferee court was already in discovery and summary judgment proceedings and so was deeply

familiar with the case, and the case was fundamentally "local" to the transferee venue.  496 F.

Supp. 2d at 180-81. In *California Farm Bureau Federation* (cited at Mot. 16, 19, 20), this Court

---

forum were "asserting claims of negligence nearly identical to those asserted here"); *Defenders of Wildlife*, 74 F. Supp. 3d at 87 (multiple lawsuits "all making the same legal challenge"); *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) (transfer appropriate where "similar claims" pending in transferee jurisdiction and convenience factors heavily favored transfer); *Martinez*, 2017 WL 1366048, at *5 (claims were "basically identical"); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 54 (D.D.C. 2000) (complaint in D.D.C. attempted to "re-argue the same issues"—patent infringement and validity—previously raised in and decided by the transferee district); *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (no transfer where original forum already presiding over patent infringement case involving the same patents, same plaintiffs, and same accused products, resulting in essentially identical legal claims and potentially inconsistent outcomes); cf. *Harris Cnty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (denying transfer despite existence of duplicative litigation where convenience factors favored the original forum); *Lihuan Wang v. Phoenix Satellite Television US, Inc.*, 2014 WL 116220, at *3-5 (S.D.N.Y. Jan. 13, 2014) (denying transfer where purportedly related cases did "not raise common issues of law, but may contain common issues of fact").

determined that the two cases involved "apparently identical issues of law and fact" arising from same operative facts (challenging a specific agency action), that no plaintiffs resided in or had substantial connections to the transferor venue, that the plaintiff and most defendants resided in transferee district, that the locus of operative facts was in the transferee venue, and that the transferee venue had greater interest in the case. 2005 WL 1532718, at *1-3. In *Coultman* (cited at Mot. 16, 17, 19), all the plaintiffs were injured in the same train derailment, which occurred in the transferee venue. 857 F. Supp. at 232. Most witnesses were located in that venue, and there was already a large, consolidated action there based on the same derailment in which other persons injured in the same accident were "asserting claims of negligence nearly identical to those asserted here," such that "the proposed forum is familiar with and has an interest in the events underlying this litigation" and was also "better suited to apply Virginia substantive law." *Id*. at 232-236. Defendants' other cases are similar.[25]

One of Defendants' authorities warrant particular attention here. In *Martinez,* plaintiffs brought an action in the Southern District of Illinois against seven defendant banks alleging ATA violations. 2017 WL 1366048, at *1. Their initial complaint was a nearly identical copy of a

---

[25] *See, e.g.*, *Blechman,* 668 F. Supp. 2d at 404-05 (transferee forum was more convenient for both the movant and most witnesses, and case would be governed by state law of the transferee forum); *Holland*, 360 F. Supp. 2d at 76-77 (agency whose decision was at issue was located in transferee venue, which was more convenient for witnesses, was where sources of proof were located, and had greater familiarity with the issues); *Reiffin,* 104 F. Supp. 2d at 54-58 (transferee forum was plaintiff's home forum, plaintiff had previously brought nearly identical lawsuit there, and transferee court was deeply familiar with issues from adjudicating and resolving the previous lawsuit). The notable exception is *In re Vicor*, 493 F. App'x at 61, in which the Federal Circuit denied a writ of mandamus directed to the district court's denial of a motion to transfer where the original forum already presided over a first-filed action involving the same plaintiffs, the same patents, and some of the same accused products. *Vicor* is distinguishable for a number of reasons. The factual and legal overlap was significantly greater than it is here; its procedural posture (denial of transfer followed by mandamus) was the opposite of the one presented here; and it involved patent litigation, in which there a is particularly strong public interest in avoiding duplicative proceedings. 493 F. App'x at 60-61.

previously filed complaint against all but one of the same defendants in the Eastern District of New York and sought nearly identical relief.[26]  *Id*. at *5.  Defendants try to frame *Martinez* as analogous precedent, but its similarities to this case are entirely superficial.  The substance of that decision supports denial of Defendants' motion here.

     *First*, as noted, *Martinez* involves near-total overlap of the plaintiffs' causes of action.  Here, the causes of action are distinct, eliminating or at least materially reducing the potential for inconsistent outcomes.  *Second*, none of the *Martinez* plaintiffs were residents of the original forum, making the propriety of venue under §2334(a) questionable at best.[27]  *See* 2017 WL 1366048, at *4.  Here, multiple plaintiffs are residents of this District.  *Third*, in *Martinez* there was near-total overlap among the defendants in the two cases (six out of seven), while only three of the eleven *Zobay* defendants are also defendants here, and only three of the five defendants here are also defendants in *Zobay*.  *Fourth*, six of the seven *Martinez* defendants were resident in or near the transferee venue, and discoverable documents were known to be located there.  *Id*. at *4-5.  Here, defendants dispute that the transferee forum even has jurisdiction over them, and they have identified no documents or witnesses who reside in it.

     In fact, the relationship between these cases and *Zobay* more closely resembles the relationship between *Martinez* and another case that the *Martinez* court declined to rely upon in

---

[26] The only difference in the relief sought was that the plaintiffs in the earlier case alleged civil conspiracy claims under both 18 U.S.C. §§2339A and 2339B, while the *Martinez* Plaintiffs did not raise any claims under §2339A, and instead alleged violations of both the "material support" and "conspiracy" provisions in §2339B.  Both raised identical claims for primary liability under the ATA based on the same conduct.  Indeed, the *Martinez* complaint literally copied-and-pasted from the *Freeman* complaint, which was noted by the court in *Martinez* when it dinged Plaintiffs' counsel in that case for including irrelevant references to New York's long-arm statute (that were the fruit of the copy-paste, but not relevant to the original *Martinez* filing location in the Southern District of Illinois).

[27] The *Martinez* court assumed, without deciding, that venue was proper in the Southern District of Illinois.  2017 WL 1366048, at *4.

considering the transfer issue.  The *Martinez* plaintiffs argued that the case should remain in the Southern District of Illinois because there was also a related case (*Shaffer*) pending there that also involved ATA claims against Deutsche Bank, which Deutsche Bank had designated as a related case to *Martinez*.  2017 WL 1366048, at *5.  The plaintiffs argued that the existence of a related case against Deutsche Bank in the Southern District of Illinois effectively balanced out the related case in E.D.N.Y., warranting keeping the *Martinez* action in its original forum.  *Id*.

The district court rejected plaintiffs' argument, noting that *Shaffer*, unlike *Martinez*, "involves plaintiffs that reside in" the original forum; that the overlap among the defendants was minimal (only one of six); and that "Shaffer involves different attacks and victims as this action and *Freeman*." *Id*.  So too here: the same factors that warranted separating *Martinez* from *Shaffer* (and allowing transfer to a venue with the much more closely related *Freeman* case)—limited overlap among defendants and allegations based on different attacks and victims—warrant separating *Davis* and *Chand* from *Zobay* (and denying a similar transfer motion here).

## CONCLUSION

For all the reasons given, the Court should deny Defendants' motion to transfer.

Dated:  June 9, 2022

Respectfully submitted,

*/s/ Geoffrey P. Eaton*

Geoffrey P. Eaton (D.C. Bar No. 473927)
Eli K. Oliphant (D.C. Bar No. 503235)
Ryan R. Sparacino (D.C. Bar No. 493700)
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
geoff.eaton@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
eli.kay-oliphant@sparacinopllc.com

*Counsel for Plaintiffs*