UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUY DAVIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants*. | Civil Action No. 22-829 (RDM) |
| SALLY CHAND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants*. | Civil Action No. 22-830 (RDM) |

**MEMORANDUM OPINION AND ORDER**

These cases arise out of a tragic series of terrorist attacks perpetrated against Americans in Iraq and Afghanistan between 2005 and 2010. Plaintiffs are the victims of these attacks and their estates and families. *Davis v. MTN Irancell Telecomms. Servs.*, No. 22-829, Dkt. 1 at 48–49 (Compl. ¶ 55); *Chand v. MTN Irancell Telecomms. Servs.*, No. 22-830, Dkt. 8 at 33 (Compl. ¶ 54). They have brought suit under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA" or the "Act"), against MTN Group Limited ("MTN Group"), a South African telecommunications company; MTN Irancell Telecommunications Services Company, an Iran-based joint venture

between MTN Group and Iranian investors; and two of MTN Group's senior executives, Phuthuma Nhleko and Irene Charnley.  *See Davis*, Dkt. 1 at 49–50 (Compl. ¶¶ 56–59); *Chand*, Dkt. 8 at 34 (Compl. ¶¶ 55–58).  The complaints allege that by entering into and participating in the MTN Irancell joint venture—along with certain other related conduct—MTN Group and its executives intentionally provided aid to Iran's Islamic Revolutionary Guard Corps ("IRGC") and various affiliated terrorist organizations and, in so doing, participated in the commission of the attacks that injured Plaintiffs.  *Davis*, Dkt. 1 at 59–60 (Compl. ¶ 95); *Chand*, Dkt. 8 at 43–44 (Compl. ¶ 94).

      Defendants have moved to transfer these cases to the Eastern District of New York.[1] *Davis*, Dkt. 23; *Chand*, Dkt. 21.  They do not dispute that venue is proper in the District of Columbia under the ATA's special venue provision, which permits suit "in the district court of the United States for any district where any plaintiff resides."  18 U.S.C. § 2334.  But they nevertheless seek a transfer pursuant to 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of justice."  Their argument turns on one central consideration: there is currently pending in the Eastern District of New York a similar case, *Zobay v. MTN Group Ltd.*, 21-3503 (E.D.N.Y).  Defendants are among those named in the *Zobay* case, *see Zobay*, Dkt. 52 at 36 (Am. Compl. ¶¶ 71–73), and the *Zobay* complaint contains many of the same factual allegations as those raised in *Davis* and *Chand*, *compare Zobay*, Dkt. 52 (Am. Compl.), *with Davis*, Dkt. 1 (Compl.), *and Chand*, Dkt. 8 (Compl.).  In their view, the presence of *Zobay* in another district justifies transferring these cases, so that the same judge, the Honorable Carol

---

[1] Defendant MTN Irancell Telecommunications Services Company has not appeared in this case. As a result, when the Court refers to "Defendants" in this opinion, it refers only to the three Defendants who have appeared and who have filed the instant motion: MTN Group, Phuthuma Nhleko, and Irene Charnley.

Bagley Amon, can preside over all three cases. *Chand*, Dkt. 21-1 at 20–26.[2] Defendants further maintain that Plaintiffs brought these cases in this forum strategically, to get a second bite at the apple after Judge Amon expressed skepticism about some of the plaintiffs' claims in the *Zobay* litigation. *Id* at 30.

The Court is unconvinced. Although Defendants have identified a handful of factors that weigh in favor of transfer, they have failed to carry their "heavy burden" of demonstrating that the relevant considerations cut "strongly in favor" of transferring actions properly brought in this forum. *United States v. H&R Block*, 789 F. Supp. 2d 74, 78 (D.D.C. 2011) (internal quotation marks omitted). Accordingly, the Court will **DENY** their motions.

## ANALYSIS

Consideration of whether to transfer a case pursuant to § 1404(a) proceeds in two parts. First, the Court must determine whether the case could properly have been brought in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). If so, the Court must then weigh the private and public interests at stake, as well as the interest of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The private interest factors are: the parties' respective choices of forum, the location where the claims arose, the convenience of the parties and witnesses, and the ease of access to sources of proof. *Defs. of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 83 (D.D.C. 2014). And the public interest factors are: "the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum," the relative congestion of the courts, and "the local interest in deciding local controversies at home." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012). Within this framework, courts have broad

---

[2] The briefing on this motion is identical across *Davis* and *Chand*, so, rather than provide parallel citations, the Court will cite only to the *Chand* briefs unless otherwise specified.

discretion to resolve § 1404(a) motions based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 29 (internal quotation marks omitted) (quoting *Van Dusen* 376 U.S. at 622). That said, "a motion to transfer under Section 1404(a) should not be granted lightly," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3848 (4th ed. 2022), and the burden of persuasion lies always with the party seeking transfer, *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 24–25 (D.D.C. 2008).

### A.  Whether *Davis* and *Chand* Could Have Been Brought in the Eastern District of New York

Whether these actions could have been brought in the Eastern District of New York is a slippery question. Defendants contend and Plaintiffs do not dispute that venue would be proper there. *Chand*, Dkt. 21-1 at 17. But the "could have been brought" inquiry also encompasses the question whether the transferee court has personal jurisdiction over the defendants. *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 172 (D.D.C. 2016). And in these cases and *Zobay* alike, Defendants insist that *no* United States district court has personal jurisdiction over them in connection with the alleged conduct giving rise to the claims. Dkt. 21-1 at 18. So, by Defendants' own lights, these cases could not have been brought in the Eastern District of New York, just as they avowedly cannot be brought in this jurisdiction. *Id.* at 18–19.

No matter, say Defendants, because the cases could have been brought in the Eastern District of New York "to the same extent" that they can be brought here. *Id.* at 17. Defendants' personal jurisdiction arguments are largely identical with respect to each forum, so they are subject to personal jurisdiction, or not, in either location to the same degree. *Id.* at 18–19. That, Defendants contend, is all they are required to show for purposes of a motion to transfer. *Id.*

Plaintiffs disagree. They point out the basic inconsistency in Defendants' insistence both that the cases could have been brought in the Eastern District of New York and that they,

4

ultimately, cannot be brought there. Dkt. 23 at 17. And they up the ante, arguing that by seeking a transfer to the Eastern District of New York, Defendants have waived any objection to personal jurisdiction in that court, should the cases ultimately be transferred. *Id.* at 18 n.7. The parties cite dueling cases, none of which, in the Court's view, persuasively answer the precise question at issue. *Compare* Dkt. 21-1 at 18, *with* Dkt. 23 at 17–18.

Because analysis of the private and public interest factors and the interest of justice convinces the Court that transfer is unwarranted in any event, it need not resolve this dispute. So it will assume, without deciding, that Defendants have the better of the argument on this threshold consideration and will proceed to the next step of the analysis.

**B.     Private Interests**

The most important private interest is the plaintiff's choice of forum, which is typically afforded "substantial" although not "unyielding" deference. *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 311 (D.D.C. 2015) (internal quotation marks omitted). However, such deference "is lessened when the plaintiff's choice is not the plaintiff's home forum," *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 332 (D.D.C. 2020), or "when the claim[] lack[s] substantial connections to th[e] forum," *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

Defendants argue that Plaintiffs' choice of the District of Columbia should be afforded no deference at all, because only a few of them reside in the District of Columbia, the District of Columbia has little connection to the controversies at issue, and the selection of the District of Columbia was an act of "forum shopping." Dkt. 21-1 at 29–30. Putting aside forum shopping for the moment, Defendants are correct on their other premises: only a small fraction of Plaintiffs reside in this forum, and the District of Columbia lacks a substantial connection to the facts of

these cases. *Id.* at 26 & n.11.  But they overstate the significance of those premises.  Although deference to a plaintiff's choice of forum is diminished where the plaintiff does not reside there and the forum lacks a significant connection to the litigation, it does not disappear entirely. *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-1783, 2021 WL 2582004, at *3 (D.D.C. June 23, 2021) ("[E]ven if Plaintiffs' choice of forum might receive *less* deference because they do not reside in the District of Columbia, their permissible choice of forum is still entitled to *some* deference, and the burden of persuasion remains with [Defendants]." (emphasis in original)).

The lack of much connection between the facts of the cases and the forum is also understandable, because these cases arise out of events occurring almost entirely outside of the United States.  The entire point of the ATA provision under which Plaintiffs sue is to provide relief to American victims of "act[s] of international terrorism," 18 U.S.C. § 2333(a), so most ATA actions will be litigated in fora that lack a connection to those acts.  The ATA also contains a specific, plaintiff-friendly venue provision.  *Id.* § 2334(a).  Although there are hundreds of special venue provisions throughout the U.S. Code, Wright & Miller, *supra*, § 3825, most of which carry little weight in assessing the relevant private interests, the broad latitude that Congress accorded ATA plaintiffs in the provision at issue here suggests that the exercise of that discretion should not lightly be set aside.

Defendants' own preference for the Eastern District of New York is a relevant consideration, although not a particularly weighty one.  The *Zobay* litigation is the sole concern driving this interest, and courts typically analyze the significance of related litigation under the public interest and interest of justice headings.  *Barham*, 496 F. Supp. 2d at 180–81; *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 53–57 (D.D.C. 2000).  *But see Cephalon*, 551 F. Supp. 2d

6

at 29–30. The Court will do likewise and will therefore defer discussion of *Zobay* until that portion of the analysis, although it recognizes that *Zobay* also bears on Defendants' private interests.

All things considered, then, the first private interest factor favors keeping the case here, because deference is due to Plaintiffs' chosen forum, albeit less deference than if more of them resided here or the litigation was more connected to the District of Columbia.

The other private interest factors are a mixed bag, although on balance they favor Plaintiffs. Plaintiffs' claims arose primarily outside of the United States—in Iran, Iraq, Afghanistan, and South Africa—and most of the conduct that is alleged to have touched the United States took place in unspecified locations. *See generally Davis*, Dkt. 1 (Compl.); *Chand*, Dkt. 8 (Compl.). That said, the complaints do reference financial transactions that flowed through New York banks, *Davis*, Dkt. 1 at 50–51, 236 (Compl. ¶¶ 63, 639); *Chand*, Dkt. 8 at 35, 208 (Compl. ¶¶ 62, 591), so this factor arguably weighs slightly in favor of transferring the cases to New York. But the vast majority of the relevant events occurred elsewhere. Plaintiffs also assert, and Defendants do not dispute, that the banks at issue are located in the Southern, rather than the Eastern District of New York. *Chand*, Dkt. 23 at 24. Those factual allegations are therefore of comparatively little significance to the transfer analysis.

The District of Columbia, however, offers greater convenience for the parties and witnesses than does the Eastern District of New York. Significantly, every one of the 859 Plaintiffs in these cases is already involved in one or more other cases in the District of Columbia. *Id.* at 20–21. By contrast, only 236 are currently litigating in the Eastern District of New York. *Id.* at 21. So the District of Columbia is more convenient for the majority of the Plaintiffs, in particular the 623 who currently have no business in the Eastern District of New

York.  Add to that the fact that Plaintiffs have produced a potential witness list, which includes far more witnesses who are located in the District of Columbia than in New York.  *Id.* at 26–28.  Finally, although the parties go back and forth about the small percentage of Plaintiffs who live in New York (of whom a smaller percentage live in the Eastern District) versus the even smaller percentage who live in the District of Columbia, *see* Dkt. 21-1 at 26–27; Dkt. 23 at 19 n.8, and the import of the slightly shorter commute that plaintiffs who live in places like California, Montana, and Texas might have to the District of Columbia versus New York, Dkt. 23 at 25; Dkt. 23-2, the Court puts no weight on these negligible considerations.

The ease of access to sources of proof is also a wash.  As just noted, Plaintiffs have represented that far more of their most important witnesses are located in the District of Columbia than in the Eastern District of New York.  Dkt. 23 at 26–28.  Cutting the other way, slightly more of the relevant facts appear to have touched New York, raising the prospect that some documentary evidence is located there, Dkt. 21-1 at 27–29, although it is also possible that certain relevant government terrorism reports are located here.

C.   **Public Interests and the Interest of Justice**

Two public interest and interest of justice factors merit discussion: the existence of the *Zobay* case in the Eastern District of New York and the question of forum shopping.[3]

Defendants correctly observe that the presence of related litigation in the transferee forum favors transfer.  *See, e.g.*, *Barham*, 496 F. Supp. 2d at 180 ("In the overall public-interest calculation, the most significant factor weighing in favor of transferring this case is the presence

---

[3] The other public interest factors are of little moment here.  All federal courts are assumed to be conversant in federal law, *City of West Palm Beach v. U.S. Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 156 (D.D.C. 2018), and neither forum has a local interest in the case.  Similarly, the relative congestion of dockets does not cut decisively either way.

8

of closely related litigation in [another district]."); *Defs. of Wildlife*, 74 F. Supp. 3d at 86 ("The pendency of previously filed related actions weighs heavily in the Court's analysis and strongly favors transfer."). There are two primary reasons for this: First, significant judicial efficiencies can be realized when two related cases are consolidated. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). Conversely, allowing cases that could be consolidated to proceed in parallel in different fora poses the risk of duplicative discovery, briefing, opinions, and the like. But by the same token, considerations of efficiency "need not be given significant weight, or even any weight [in the transfer analysis] . . . if there is no realistic possibility of consolidating the pending litigation with the related cases." Wright & Miller, *supra*, § 3854. Second, courts have often found transfer appropriate "to avoid subjecting a defendant to the grave risk of inconsistent judgments deriving from the same conduct." *Cephalon*, 551 F. Supp. 2d at 29. This risk is particularly acute where it appears that a defendant may face "inconsistent orders" or conflicting injunctions leading to irreconcilable legal obligations. *See Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328, 2005 WL 1532718, at *2 (D.D.C. June 29, 2005) (highlighting this concern).

   Although the risks of inefficiency and inconsistent judgments are both relevant considerations here, neither concern is at its apex in these cases. Efficiencies undoubtedly would be realized if these cases were consolidated with *Zobay*. But consolidation is no sure thing. All agree that many of the factual allegations in *Zobay*, *Davis*, and *Chand* overlap. Dkt. 21-1 at 13–15; Dkt. 23 at 21. But there are also significant differences between the cases. Most obviously, there is no overlap among the plaintiffs in any of the three lawsuits. Dkt. 21-1 at 13–14; Dkt. 23

9

at 7. The defendants also differ to some extent: in these cases the only Defendants are MTN Group entities and executives, *Davis*, Dkt. 1 at 49–50 (Compl. ¶¶ 56–59); *Chand*, Dkt. 8 at 34 (Compl. ¶¶ 55–58), whereas *Zobay* features two entities affiliated with the Chinese company ZTE and five affiliated with the Chinese company Huawei, *Zobay*, Dkt. 52 at 36–38 (Am. Compl. ¶¶ 71–81). The theories of liability also diverge. In *Davis* and *Chand*, Plaintiffs seek to hold Defendants directly liable under the ATA for acts of international terrorism. *Davis*, Dkt. 1 at 557–64 (Compl. ¶¶ 2851–71); *Chand*, Dkt. 8 at 373–80 (Compl. ¶¶ 1456–76). They do not bring secondary liability claims. In *Zobay*, in contrast, the plaintiffs assert only aiding and abetting and conspiracy liability theories. *Zobay*, Dkt. 52 at 494–504 (Am. Compl. ¶¶ 1589–1631). Perhaps recognizing the distinctions between the cases, Defendants themselves assert that "consolidation is not the inevitable result of transfer" and suggest that the cases may proceed in the Eastern District of New York merely as related cases, rather than being consolidated. Dkt. 24 at 25. They are probably correct that some efficiency might be gained even if the cases are not consolidated. But because consolidation is not a foregone conclusion, the potential for greater efficiency is uncertain and therefore weighs less heavily in this case than in many of the cases on which Defendants rely.[4]

---

[4] *See, e.g.*, *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("[W]here two cases *between the same parties* on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.") (internal quotation marks and citation omitted); *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 402–03 (E.D.N.Y. 2009) (same plaintiffs and defendants); *Cal. Farm Bureau Fed.*, 2005 WL 1532718, at *2 (same plaintiffs and defendants and "apparently identical issues of law and fact"); *Martinez v. Deutsche Bank AG*, No. 16-1207, 2017 WL 1366048, at *1–2, *5 (S.D. Ill. Apr. 12, 2017) (six of seven defendants overlapped and same terrorist attacks injuring same victims at issue); *Reiffin*, 104 F. Supp. 2d at 50–57 (same plaintiff, same primary defendant, legal issues nearly identical to prior litigation such that court believed prior litigation might have preclusive effect).

Defendants also overstate the possibility of inconsistent judgments and the harm that might flow from them. As noted, despite the fact that a significant portion of the alleged conduct overlaps between the cases, the theories of liability differ. For that reason, it is improbable that Defendants will be subject to judgments that are truly inconsistent. And although it appears that the personal jurisdiction arguments in each case are similar, *Davis*, Dkt. 22-1 at 26–49; *Chand*, Dkt. 20-1 at 27–49; *Zobay*, Dkt. 82-1 at 27–46, it is not uncommon for multiple cases to be filed based on related conduct, requiring different courts to resolve similar jurisdictional issues.

More importantly, this is not a situation in which Defendants would face irreconcilable legal obligations, even assuming that this Court and the Eastern District of New York reach different conclusions respecting personal jurisdiction. In that scenario, Defendants would merely have to continue defending one suit, brought by one set of plaintiffs and premised on one theory of liability, and would no longer have to defend a different suit, brought by different plaintiffs and premised on a different theory of liability. Although Defendants might prefer to avoid that circumstance, it is by no means an untenable one. For similar reasons, even if this Court and the Eastern District of New York reach the merits, and even if Defendants prevail in one forum and not in the other, that result would not be an untenable one; to the contrary, such a prospect is a matter of daily life for many companies that face tort litigation in multiple jurisdictions.

This situation can therefore be distinguished from those in *Defenders of Wildlife v. Jewel*, 74 F. Supp. 3d 77 (D.D.C. 2014) and *F.T.C. v. Cephalon*, 551 F. Supp. 2d 21 (D.D.C. 2008), two cases on which Defendants rely in which related litigation was the overriding reason the cases were transferred. In both, the consequences of inconsistent judgments would have been much more problematic than in this case. The plaintiffs in *Defenders of Wildlife* were seeking declaratory and injunctive relief, including vacatur of a rule and various affirmative orders

requiring the Fish and Wildlife Service to reconsider certain actions and undertake a notice-and-comment process. *Defs. of Wildlife*, No. 14-1025, Dkt. 1 at 28. The plaintiffs in the related cases sought similar relief. *See Okla. Indep. Petroleum Ass'n v. Dep't of the Interior*, 14-307 (N.D. Okla.), Dkt. 1 at 27 (seeking vacatur of agency rule). The *Defenders of Wildlife* court therefore confronted the prospect of conflicting vacatur determinations and competing orders. *See* 74 F. Supp. 3d at 87. Similarly, in *Cephalon* the FTC asked this Court permanently to enjoin the defendant from "maintaining or enforcing the terms" of a settlement agreement it had entered into with competitors that restricted the marketing of various generic pharmaceuticals, *Cephalon*, 08-244, Dkt. 1 at 27, and in the related action the private plaintiffs sought a declaration that the settlement agreement constituted an illegal restraint on trade, *King Drug Co. of Florence, Inc. v. Cephalon*, No. 06-1797 (E.D. Pa.), Dkt. 1 at 38. Thus, in both cases the plaintiffs sought affirmative relief of an all-or-nothing nature that, once imposed on the defendants, could not readily have been undone or reconciled with orders denying such relief or requiring different relief. Conflicting judgments in such situations would have put the defendants in a considerable bind. Defendants here, in contrast, face nothing like that. Plaintiffs seek only damages, and it is not unmanageable for a company or individual to have to pay damages to one set of plaintiffs and not to another, especially where the legal theories on which liability is predicated differ.

Defendants attempt to bolster the significance of the *Zobay* litigation by tying it to concerns about forum shopping. They make much of both the fact that the same law firm represents the plaintiffs in *Davis*, *Chand*, and *Zobay* and the way in which the *Zobay* litigation proceeded before the *Davis* and *Chand* were filed. *See, e.g.*, Dkt. 21-1 at 7. The original *Zobay* complaint contained both direct liability and aiding and abetting claims. *Zobay*, Dkt. 1 at 176–82

12

(Compl. ¶¶ 588–613). At a pre-motion conference, Judge Amon asked the plaintiffs' counsel if the plaintiffs were "seriously pursuing a primary [liability] claim," explaining that they did not need to brief the claim if the plaintiffs were "not serious about [it]," to which counsel responded in the affirmative. Dkt. 21-5 at 11–12 (Nov. 30, 2021 Pre-motion Conf. Tr. at 10:25–11:4). Then, after MTN Group moved to dismiss the case, the plaintiffs filed an amended complaint that dropped the direct liability claims and added conspiracy claims. *Zobay*, Dkt. 52 at 494–504 (Am. Compl. ¶¶ 1589–1631). Approximately six weeks later, Plaintiffs in *Davis* and *Chand* filed their cases, alleging direct liability only. *Davis*, Dkt. 1 at 557–64 (Compl. ¶¶ 2851–71); *Chand*, Dkt. 1 at 371–80 (Compl. ¶¶ 1456–76). Based on this sequence of events, Defendants ask the Court to infer two things: First, they suggest that Plaintiffs' counsel perceived that Judge Amon was hostile to the *Zobay* plaintiffs' direct liability claims. And second, they contend that, in response to this perceived hostility, Plaintiffs' counsel hived those claims off in *Zobay* and transported them to this Court, in hopes of finding a more receptive judge. *Chand*, Dkt. 21-1 at 16–17. Such tactics, Defendants insist, "should not be tolerated." *Id.* at 16.

For several reasons, the Court gives no weight to Defendants' forum shopping argument. First, the charge of forum shopping is an odd one where all of the cases at issue involve different plaintiffs. Although Defendants recognize this and focus their charge on the law firm representing the various plaintiffs, it remains the case that courts typically concern themselves with forum shopping by parties, not law firms. *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (describing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017), as a case in which the "*plaintiffs* were engaged in forum-shopping" (emphasis added)); *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (describing "forum shopping *by habeas petitioners*" (emphasis added)); *Sec. Indus. Ass'n v. Bd.*

13

*of Governors of Fed. Reserve Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990) (describing the "*[p]etitioner's* effort to relitigate" an issue as "garden variety forum shopping" (emphasis added)).  Second, Defendants inflate the significance of a passing comment Judge Amon made at a conference before any briefing had taken place.  Read in context, the very most that can be said about Judge Amon's remark is that it expressed mild skepticism or uncertainty about the claims.  Judges pose questions—even pointed ones—about pending claims all the time, often when they have not yet had the benefit of any briefing.  It is unlikely that one such remark drove Plaintiffs' decision regarding where to bring two different lawsuits involving hundreds of different plaintiffs.  That is especially so given the more obvious explanation that Plaintiffs selected this forum, at least in part, because every one of them was already litigating a case in this district.

And even if counsel recommended this forum to the *Davis* and *Chand* Plaintiffs partially for strategic reasons, that is hardly an outrage under the circumstances.  This case does not present the hallmarks of problematic forum shopping: the lawsuit does not have significantly greater ties to New York than to the District of Columbia; Plaintiffs are not seeking a second bite at the same apple after an unfavorable result in a prior forum; these lawsuits were subject to random assignment in this Court; and Defendants have not actually identified any legal rule— besides speculation about the import of a question posed by Judge Amon at a status conference—that is different between the Second and District of Columbia Circuits that Plaintiffs might be seeking to avoid or to avail themselves of.  Moreover, even if strategic considerations played some (small) role in Plaintiffs' choice of forum, it is equally plausible that Defendants' motion to transfer "is itself motivated, at least in part, by . . . strategic considerations."  *Sandpiper Residents Ass'n*, 2021 WL 2582004, at *3.  Indeed, it is *Defendants*

14

who speculate that Judge Amon has expressed skepticism about Plaintiffs' direct liability theory, leaving *them* with a strategic interest in having her adjudicate these cases.

To be sure, Defendants have identified one nearly four-decades-old case from this district in which the court found transfer warranted because the plaintiff was engaged in forum shopping. *Schmid Lab'ys, Inc. v. Hartford Acc. and Indem. Co.*, 654 F. Supp. 734, 736–37 (D.D.C. 1986). But *Schmid* is both unpersuasive and distinguishable. Simply put, *Schmid* put too much weight on forum-shopping concerns—which, to the extent they exist, are often a two-way street—and, in any event, also noted that "more witnesses, business offices, and documents" were located in the transferee forum in that case, a consideration not present here. *Id.* at 736–37 & n.8.[5]

So *Zobay* must stand alone. And standing alone it is not enough. The Court will not endeavor to describe every case that Defendants cite, but Plaintiffs persuasively explain how in most of them the presence of related litigation was but one factor among several that motivated the courts' decisions. In *Martinez v. Deutsche Bank AG*, No. 16-1207, 2017 WL 1366048 (S.D. Ill. Apr. 12, 2017), for instance, the court transferred an ATA case from the Southern District of Illinois to the Eastern District of New York in part because of related litigation pending there. *Id.* at *5. But that was not the only reason; the court also found that more of the evidence was likely to be found in New York. *Id.* The same is true of many of Defendants' other cases: related litigation was but one factor among others. *See, e.g.*, *Barham*, 496 F Supp. 2d at 178–80 (transferring employment discrimination case because of related litigation in transferee forum

---

[5] Given the Court's reliance on Plaintiffs' representations that they are not forum shopping and that the claims asserted in this case differ from those asserted in *Zobay*, the Court assumes that Plaintiffs do not intend to seek leave to amend the complaints in these cases to add aiding and abetting or conspiracy theories of liability, like those raised in *Zobay*.

but also because all of the plaintiffs had worked in the transferee forum during the relevant period, most plaintiffs only raised claims related to conduct in transferee forum, a majority of plaintiffs resided in transferee forum, and the legal claims were "essentially identical" between the case and the related litigation in the transferee forum); *Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 233–35 (E.D.N.Y. 1994) (transferring case because of related litigation in transferee forum but also because nearly all of the central witnesses and evidence were located in the transferee forum and "the events forming the basis of the action all transpired" in the transferee district).

*Martinez* is also instructive in the contrast that it drew between a related case that the court thought important to litigate in the same forum as the case at issue and one it did not. *Martinez* considered it significant that there was a pending case in the Eastern District of New York that involved six of the seven defendants named in the case before the *Martinez* court and that pertained to the same international terrorist attacks and victims. 2017 WL 1366048, at *5. The court considered it less significant that there was also a related case pending in the Southern District of Illinois that involved only one overlapping defendant and "different attacks and victims." *Id.* *Zobay* is more like the latter case than the former one in relation to *Davis* and *Chand*: there is only partial, rather than near-total, overlap in defendants, and the cases arise out of different attacks with different victims.

Ultimately Defendants have convinced the Court only that the transfer issue is a close one and that there are some reasons to prefer the Eastern District of New York. But that is not enough to overcome Plaintiffs' legitimate, lawful, and reasonable selection of this forum. Defendants had the burden of demonstrating that the scales tip decisively in favor of transfer, and they failed to do so.

## CONCLUSION

For these reasons, it is **ORDERED** that Defendants' motions to transfer, *Davis*, Dkt. 23, and *Chand*, Dkt. 21, are hereby **DENIED.**

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 30, 2023